# STATE OF CONNECTICUT *v.* EDWARD VINES
## (AC 21386)

Lavery, C. J., and Mihalakos and Flynn, Js.

Argued March 19—officially released July 30, 2002

*Glenn W. Falk*, special public defender, for the appellant (defendant).

*Thomas M. DeLillo*, special deputy assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *James Bernardi*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Edward Vines, appeals from the judgment of conviction, following a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). On appeal, the defendant claims that the trial court improperly restricted his cross-examination of the state's witness, the victim Darryl Petitt.[1] Specifically, he claims that the court should have allowed him, on cross-examination, to introduce a prior consistent statement of the witness. We affirm the judgment of the trial court.

The record reveals the following pertinent facts. Petitt was sitting at the corner of a lane in the Southfield Village housing project in Stamford in the early morning hours of May 11, 1998, shortly after midnight, when he was beaten and robbed of his money and a watch at gunpoint by two men, who were riding in a two toned car driven by a third man. Petitt reported to the police

---

[1] The defendant framed his arguments, both in this court and at trial, as being supported by the rules of evidence. The defendant has not claimed that the restriction imposed by the court on his cross-examination of Petitt amounted to a violation of the defendant's constitutional right to confront the witnesses against him pursuant to the sixth amendment to the United States constitution. See *State* v. *Jones*, 46 Conn. App. 640, 646, 700 A.2d 710 ("[e]very evidentiary ruling that denies a defendant a line of inquiry to which he thinks he is entitled is not constitutional error"), cert. denied, 243 Conn. 941, 704 A.2d 797 (1997). Therefore, because the potential constitutional aspect of the defendant's claim was neither raised nor briefed by the defendant, we consider that issue waived. See Practice Book § 60-5; *State* v. *Prioleau*, 235 Conn. 274, 294–95, 664 A.2d 743 (1995) (refusing to analyze claim where defendant failed to provide any legal analysis).

that one of the men had a silver handgun and that the other had a shotgun. Later that same night, the police apprehended three men, the defendant, Torok Johnson and the defendant's nephew, Curtis Vines, near a two toned car matching the description of the one driven by Petitt's attackers. Upon searching the defendant, the police found some crumpled bills and the watch that was taken from Petitt that night. The police searched the area around the car and found a shotgun in bushes three feet from the car.

The police brought Petitt to the scene of the arrest. Petitt immediately identified the car as the same one driven by his attackers. After being shown the defendant and the men accompanying him, one at a time, Petitt identified two of them as his attackers and described the role that each played during the robbery. The three men—the defendant, Johnson and Curtis Vines—were arrested, and the defendant was charged with four counts of robbery in the first degree in violation of § 53a-134 (a) (2).[2]

Petitt went to the police station where he gave a voluntary statement.[3] In that statement, Petitt described the robbery in detail, including a description of the two toned car and how he had approached it, as well as the weapons used and the type of watch he was wearing. Finally, he described his assailants and the role that each played in the robbery.

On the basis of evidence it obtained after the initial arrest of the defendant, the state added two counts of

---

[2] The defendant was also charged with the robberies of Carlos Medina, Damian Addison, and a fourth victim, who was not identified in the record. These robberies occurred on the evening of May 10, 1998. The fourth count was dismissed when the victim failed to appear in court to testify. After the first trial ended in a mistrial, the second jury acquitted the defendant of robbing Medina and Addison.

[3] That voluntary statement was later admitted in the defendant's trial pursuant to State v. Whelan, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

tampering with a witness, in violation of General Statutes § 53a-151 (a), to the information already pending against him.

Approximately three months after the robbery, Petitt was approached by Jesse Johnson, the father of Torok Johnson. Torok Johnson was one of the men arrested with the defendant. Jesse Johnson told Petitt that if his son went to jail, "there was going to be trouble." Johnson also told Petitt that he had better not catch him in the "village" again in an apparent reference to the Southfield Village housing project where the robbery occurred.

Petitt appeared in court to testify at a preliminary hearing on the afternoon of January 26, 1999. While Petitt was outside the courthouse waiting to testify, a man named "Biggy" Smalls approached him. Smalls offered to reimburse Petitt for the value of the stolen items and told Petitt to "leave it alone" and stop coming to court. Shortly thereafter, Petitt took the witness stand, but could not identify the defendant as his assailant. A week after Petitt testified at the preliminary hearing, Smalls approached him again. Smalls threatened to punch Petitt and accused him of lying.

In January, 1999, the defendant sent a letter to Jesse Johnson regarding, among other things, Petitt's appearance at the preliminary hearing. The defendant wrote that Jesse Johnson should contact Smalls because he was "down for whatever." The defendant made several telephone calls in late January and early February, 1999, to Jesse Johnson from the correctional facility where the defendant was incarcerated. In those conversations, he gave Johnson instructions similar to the ones in his letter.

In April, 1999, Petitt was taken to the state's attorney's office where he gave a statement concerning his contacts with Smalls and Jesse Johnson. Petitt mentioned

that, since his January court appearance, he had been incarcerated at the same facility as Torok Johnson, the man he had identified as one of the robbers and the son of Jesse Johnson, who had threatened Petitt.

A jury trial was conducted in May, 1999. During the course of that May, 1999 trial, Petitt testified that he could not remember many of the details of the robbery. In that trial, the defendant was convicted of the tampering charges, but one of the robbery counts was dismissed when an alleged victim of that offense failed to appear in court, and the jury deadlocked on the remaining robbery counts, prompting the court to declare a mistrial as to those counts. In April, 2000, a retrial before a jury of six began on the remaining three robbery charges.

We first discuss the testimony of Petitt on direct examination prior to the introduction of his statement pursuant to the rule of *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). During the April, 2000 trial, Petitt again testified that he was unable to remember many of the details of the night of the robbery, including giving the voluntary written statement to the police, and the coloring of the car driven by his assailants. The state requested a *Whelan* hearing, and the court excused the jury. Following the voir dire of Petitt outside the presence of the jury, the court granted the state's request that Petitt's May 11, 1998 statement be admitted pursuant to *Whelan*. The state's position was that Petitt's testimony at the second trial was inconsistent with the statement that he had given to police on the morning of the robbery and that his testimony may have been influenced. Specifically, during the course of the *Whelan* hearing, one of the state's arguments was that Petitt might, in fact, remember the details of the robbery, but he was in jail and would have to remain there after the trial.

Next, we turn to the questions posed on direct examination that suggested the possibility that Petitt did, in fact, remember the details of the robbery, but was reluctant to testify thereto. The prosecutor asked several questions in an attempt to suggest to the jury that Petitt was a reluctant witness due to outside influences, but Petitt's responses were generally not helpful.[4] The prosecutor also asked several questions regarding Petitt's interactions with the defendant's friends and relatives. The prosecutor elicited responses from Petitt that in January, 1999, Smalls, after discussing the robbery with Petitt, offered him money.

We mention at this point that, as further evidence of undue influence on Petitt, the court admitted Petitt's statement, given on April 29, 1999, in the state's attorney's office.[5] In that statement, Petitt said that Smalls asked him about the robbery and then told Petitt to "leave it alone and stop coming to court." Petitt also said, "Biggy said something—that I had lied to him and I said, 'About what?' Biggy then said he should punch me in the face." Finally, the April, 1999 statement described Petitt's encounter with Jesse Johnson, the father of Torok Johnson. In his statement, Petitt said that he was approached by Jesse Johnson at some point before August, 1998. Petitt said that Jesse Johnson told him that if his son, Torok Johnson, went to jail, "there [was] going to be trouble," and "he better never catch [Petitt] in the village again."

---

[4] Before the jury, the prosecutor asked Petitt, "Is there a reason why you don't want to tell us what happened that night?" Petitt answered, "I don't remember everything that happened that night." After the May 11, 1998 statement was admitted as a full exhibit and was published to the jury, the prosecutor brought out testimony from Petitt that he was incarcerated. The prosecutor also asked Petitt, "What happens to people in jail that testify at a court case," to which he responded, "I don't know."

[5] This evidence was offered by defense counsel, presumably because some of the statements contained therein could rebut the inference that Petitt was actually influenced by the actions of Smalls or Jesse Johnson.

We now turn to the defendant's cross-examination of Petitt. During cross-examination, defense counsel attempted to prove that Petitt's lack of memory was genuine and not the result of any improper influence on the part of the defendant or his friends. In response to the questions of defense counsel, Petitt testified that on the night of the robbery, he was under the influence of drugs. Petitt also testified that he did not feel intimidated by Smalls in any way. When defense counsel asked, "Now did . . . [Biggy] Smalls or anybody else act toward you in a way that would cause you to change your testimony," Petitt answered, "No."

Petitt further testified on cross-examination that during the robbery he was struck in the head and possibly knocked unconscious. He testified that at the time he went to the police station on May 11, 1998, he was still feeling the effects of drugs, alcohol and the blow to his head. Petitt testified that he could not positively identify the men at the scene that night. Finally, Petitt testified that he had made identifications based on the car, not on what the people looked like.

Finally, we turn to defense counsel's attempt to introduce Petitt's testimony from the May 12, 1999 trial as a prior consistent statement being offered to rebut an implication, from the introduction of the *Whelan* statement, that Petitt was "conveniently forgetting his testimony" at trial. We note that the earlier May 12, 1999 trial was the one in which the defendant had been found guilty of witness tampering. Defense counsel attempted to elicit an answer from Petitt that, during the May, 1999 trial, he was unable to remember many of the details of the robbery. The state objected to the admission of this earlier testimony as a prior consistent statement. In effect, defense counsel's position was that the prior testimony was being offered to counter the *Whelan* statement and to rebut the state's position that Petitt was conveniently forgetting the events of the

robbery because of fear and undue influence upon him. Defense counsel also claimed admissibility of the prior consistent statement at trial on grounds that the statement rebutted an inference of recent contrivance. The court sustained the state's objection to the admission of the earlier May, 1999 testimony on the ground that it was a prior consistent statement not made shortly after the robbery. Petitt's May 12, 1999 statement was made one year after the May 11, 1998 robbery. The defendant was subsequently convicted of the robbery of Petitt and this appeal followed.

We first set forth our standard of review. "It is well established that a trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . The proferring party bears the burden of establishing the relevance of the offered testimony. Unless a proper foundation is established, the evidence is irrelevant. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Soto*, 59 Conn. App. 500, 505, 757 A.2d 1156, cert. denied, 254 Conn. 950, 762 A.2d 906 (2000).

"Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . This deferential standard is applicable to evidentiary questions involving hearsay, generally . . . and to questions relating to prior consistent statements, specifically." (Citations omitted; internal quotation marks omitted.) *State* v. *Hines*, 243 Conn. 796, 801–802, 709 A.2d 522 (1998). Finally, even if the trial court did not engage in the proper inquiry as to the admissibility of evidence, "we are mindful of our author-

ity to affirm a judgment of a trial court on a dispositive alternate ground for which there is support in the trial court record." (Internal quotation marks omitted.) *State* v. *Pierce*, 67 Conn. App. 634, 639, 789 A.2d 496, cert. denied, 260 Conn. 904, 795 A.2d 546 (2002); see also *Favorite* v. *Miller*, 176 Conn. 310, 317, 407 A.2d 974 (1978) (where court "reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it").

We now turn to the defendant's claim. The sole question presented to us on appeal is whether the court improperly excluded Petitt's testimony from the May, 1999 trial as a prior consistent statement. We conclude that the exclusion of the statement was proper but for reasons other than those relied on by the court. "An out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies. . . . Prior consistent statements of a witness are generally regarded as hearsay and are not admissible at trial, either for their truth or for the purpose of rehabilitating a witness' damaged credibility." (Internal quotation marks omitted.) *State* v. *Lewis*, 67 Conn. App. 643, 651, 789 A.2d 519 (2002). "The rationale for excluding this evidence is relevancy. In the normal course of events, the witness' story is not made more probable or more trustworthy by any number of repetitions of it. *State* v. *Valentine*, 240 Conn. 395, 412–13, 692 A.2d 727 (1997)." *State* v. *Harris*, 48 Conn. App. 717, 730, 711 A.2d 769, cert. denied, 245 Conn. 922, 717 A.2d 238 (1998).

Although the general rule is that prior consistent statements of a witness are inadmissible, we have recognized certain exceptional situations in which such statements are allowed in evidence; for example, "using the prior consistent statement to rehabilitate a witness who has been impeached by a suggestion of bias or

interest arising subsequent to the prior statement; see *State* v. *Jeffrey*, 220 Conn. 698, 713–14, 601 A.2d 993 (1991), cert. denied, 505 U.S. 1224, 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992); by a suggestion of recent contrivance; see *State* v. *Dolphin*, 178 Conn. 564, 568 n.5, 424 A.2d 266 (1979); by a charge of faulty recollection; see *State* v. *Anonymous (83-FG)*, 190 Conn. 715, 729, 463 A.2d 533 (1983); or by a prior inconsistent statement. See *State* v. *Torres*, 210 Conn. 631, 641, 556 A.2d 1013 (1989). Whether the circumstances support the admission of this evidence is left to the discretion of the trial court. See *State* v. *McCarthy*, 179 Conn. 1, 18, 425 A.2d 924 (1979)." *State* v. *Harris*, supra, 48 Conn. App. 730–31.

We turn to the court's analysis of the evidentiary issue presented here. Defense counsel attempted to offer Petitt's prior consistent statement, his May, 1999 testimony, in order to rebut an inference that undue influence had prompted Petitt's lack of memory. When the state objected to this evidence, defense counsel responded, "the state's position or at least as alluded to the fact that . . . particularly by asking that the statement be *Whelan*'d in here, [is] that [Petitt] is conveniently forgetting his testimony today. What I am trying to show is that in each and every time he has been asked this, he has had difficulty recalling the facts." The state responded by stating, "I think that the state has shown that he was approached by Biggy Smalls before he testified." The court considered, however, the admissibility of the prior consistent statement under the test for "faulty recollection." See, e.g., *State* v. *Anonymous (83-FG)*, supra, 190 Conn. 729; *Thomas* v. *Ganezer*, 137 Conn. 415, 418–21, 78 A.2d 539 (1951). Reading from the commentary to § 6-11 (b) of the Connecticut Code of Evidence, the court stated, "The only conceivable situation in which a prior consistent statement could be admitted to counter a claim of inaccurate

memory, which is what we are dealing with here, involves, one, impeachment by a prior inconsistent statement made some time after the event when a witness' memory has faded. We are not dealing with that. We are dealing with this. Two, support of a witness' in-court testimony by showing a prior consistent statement made shortly after the event." The court went on to exclude the May, 1999 testimony as a prior consistent statement on the ground that it was not made shortly after the robbery.

Defense counsel was not, however, attempting to counter a claim of inaccurate memory. Quite the contrary, defense counsel was attempting to prove that Petitt's memory problems were genuine. The state offered evidence to prove that the witness' purported lack of memory was not genuine, but rather was a result of the improper influence of the defendant and the defendant's friends and relatives. In light of the arguments made to the trial court and to this court in the defendant's brief, it becomes clear that the defendant was trying to counter a claim of undue influence.[6] *State*

---

[6] When the parties were arguing at trial as to the admissibility of the prior consistent statement, the defendant made passing reference to "recent contrivance." Although a prior consistent statement may be used to counter a claim of recent contrivance; *State* v. *Ouellette*, 190 Conn. 84, 98, 459 A.2d 1005 (1983); it is clear from the record that the defendant was offering the statement to counter a claim of undue influence.

The two doctrines are distinguishable. A claim of undue influence will involve a situation in which the statement's opponent offers evidence that, prior to trial, the witness' testimony may have been affected by other persons. See *State* v. *Harris*, supra, 48 Conn. App. 731. On the other hand, " '[t]he charge of recent contrivance is usually made, not so much by affirmative evidence, as by negative evidence that the witness did not speak of the matter before, at a time when it would have been natural to speak; his silence then is urged as inconsistent with his utterances now, i.e., as a self-contradiction . . . . The effect of the evidence of consistent statements is that the supposed fact of not speaking formerly, from which we are to infer a recent contrivance of the story, is disposed of by denying it to be a fact, inasmuch as the witness did speak and tell the same story . . . .' 4 Wigmore, Evidence (Chadbourn Rev.) § 1129, pp. 270–71 . . . ." *State* v. *Ouellette*, supra, 190 Conn. 98.

v. *Harris*, supra, 48 Conn. App. 731 (allowing prior consistent statement of state's witness after defendant suggested that his testimony was result of coaching).

There may be cases in which it is unnecessary to draw a distinction in the analysis for admitting a prior consistent statement in one of the exceptional situations set forth previously. See *State* v. *Hydock*, 51 Conn. App. 753, 771–72, 725 A.2d 379, cert. denied, 248 Conn. 921, 733 A.2d 846 (1999). The present case, on the other hand, does require us to make such a distinction. Here, the trial court applied the rule of *Thomas* v. *Ganezer*, supra, 137 Conn. 418–21, which requires a prior consistent statement offered to rebut a charge of faulty memory to be made shortly after the event. In the present case, even if the prior consistent statement had been made shortly after the robbery, it would have been irrelevant to the issue of whether Petitt's testimony was influenced by the actions of the defendant and his friends unless that statement had been made prior to any possible influence. See *State* v. *Hydock*, supra, 773.

When a party is attempting to use a prior consistent statement to counter a claim of undue influence, the analysis is similar to that for cases involving a witness with a motive, bias or interest in the case. See *State* v. *Jeffrey*, supra, 220 Conn. 713–14; *State* v. *Hydock*, supra, 51 Conn. App. 773; *State* v. *Harris*, supra, 48 Conn. App. 731. The court should have applied the rule set forth in *State* v. *Jeffrey*, supra, 713–14, and *State* v. *Dolphin*, supra, 178 Conn. 570–71. "[I]f a witness has been impeached on the basis of bias, motive or interest, prior consistent statements may be admitted to rehabilitate his damaged credibility, if the proponent of the prior consistent statement establishes that it was made

Because the doctrine of recent contrivance is not the same as undue influence, and because the issue of recent contrivance was not briefed by the defendant on appeal, that issue is deemed waived. See *State* v. *Nieves*, 65 Conn. App. 212, 215–16 n.4, 782 A.2d 203 (2001).

before the alleged bias, motive or interest arose. *State v. Dolphin*, [supra, 570–71]." *State* v. *Jeffrey*, supra, 713–14. As Wigmore has noted: "A consistent statement, at a time prior to the existence of a fact said to indicate bias, interest, or corruption, will effectively explain away the force of the impeaching evidence; because it is thus made to appear that the statement in the form now uttered was independent of the discrediting influence." 4 J. Wigmore, Evidence (Chadbourn Rev. 1972) § 1128, p. 268.

The defendant, as the proponent of the prior consistent statement, would have the burden of showing that the statement was made before the alleged influence occurred, so as to show that the witness' testimony was not the result of undue influence. See *State* v. *Jeffrey*, supra, 220 Conn. 714 (placing the burden on proponent of prior consistent statement to prove statement made before motive to falsify had arisen). The defendant made no such showing. There was ample evidence on the record before the court to support the conclusion that the witness was subjected to undue influence on several occasions before his testimony in the first trial on May 12, 1999. The threats made by Torok Johnson's father, Jesse Johnson, in 1998 and the offer of money and orders of Smalls to "leave it alone and stop coming to court" made in early 1999 preceded Petitt's testimony in the May, 1999 trial in which Petitt indicated an inability to remember or recall events. Furthermore, the defendant was convicted of witness tampering in the May 12, 1999 trial. The May, 1999 consistent statement of Petitt, thus, would not have been admissible evidence on the issue of whether Petitt's lack of memory was the result of undue influence, because the defendant, who offered the prior consistent statement, failed to sustain his burden of establishing that it was made prior to the alleged undue influence or the time that any bias,

motive or interest had arisen, as *Dolphin* requires. See *State* v. *Dolphin,* supra, 178 Conn. 570–71.

We conclude that the trial court reached the correct conclusion in excluding the prior consistent statement, although on mistaken grounds. We therefore sustain the judgment of the trial court because there is a dispositive alternate ground for which there is support in the record. See *State* v. *Pierce,* supra, 67 Conn. App. 639.

The judgment is affirmed.

In this opinion the other judges concurred.