STATE OF CONNECTICUT *v.* GERMAN M. QUILES, JR.
(AC 25513)

DiPentima, Gruendel and Peters, Js.

Argued February 22—officially released July 4, 2006

*Carlos E. Candal,* special assistant public defender, for the appellant (defendant).

*Sarah Hanna,* special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Brian K. Sibley, Sr.,* assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. This criminal appeal involves an elderly man who sustained severe bodily injuries in his home. Alleging that the victim's injuries resulted from an altercation with his son, the state charged the son with assault and unlawful restraint. The son claimed, however, that the victim's injuries resulted from a slip and fall in the bathroom where he was found. The principal issue is whether the trial court improperly prevented

the son from offering impeachment evidence through the testimony of a Spanish speaking investigator about an exculpatory conversation with the victim. The jury found the defendant guilty as charged, and the court rendered judgment in accordance with the verdict. We affirm the judgment of the trial court.

The state charged the defendant, German M. Quiles, Jr., with having committed assault of a victim sixty years of age or older in the second degree in violation of General Statutes § 53a-60b (a) (1) and unlawful restraint in the first degree in violation of General Statutes § 53a-95. The alleged victim was his sixty-seven year old father, German M. Quiles, Sr., in whose household the defendant was living. The state claimed that the defendant intentionally had caused physical injury to his father by grabbing him and throwing him on the floor and unlawfully had restrained him by holding him in a manner exposing him to a substantial risk of physical injury. The jury found the defendant guilty as charged, and the court sentenced him to eight years of imprisonment concurrent with a sentence that he already was serving.

The jury reasonably could have found that, on the evening of June 25, 2003, the father berated the defendant for excessive use of the father's telephone. Early the following morning, when the defendant was still on the telephone, the parties fought about the telephone. Before the father could return to his bed, the defendant grabbed him, picked him up, threw him on a tile floor and then threw him back on his bed. After sleeping for a few hours, the father made his way to his nearby bathroom, where he collapsed. Sometime later that morning, paramedics were summoned to take the father to the emergency room at Yale-New Haven Hospital. There, various tests revealed that the father had sustained a pelvic bone fracture, internal bleeding and multiple bruises.

In his appeal from the judgment convicting him as charged, the defendant has raised two issues in support of his contention that the victim, confused and possibly under the influence of alcohol, simply fell on his way to the bathroom. He maintains that the trial court improperly interfered with his presentation of this defense by (1) preventing him from introducing the testimony of a Spanish speaking investigator to contradict the victim's account of what had occurred and (2) refusing to disclose to him the victim's mental health records from an earlier hospitalization. We are not persuaded.

I

The defendant's principal claim is that the trial court improperly prevented him from challenging the credibility of the testimony that his father gave at trial about how he came to be seriously injured. He maintains that the trial court should have permitted him to impeach his father's testimony not only on cross-examination but also by the testimony of a Spanish speaking investigator with whom the father had had a conversation before the trial.

Our review of this claim of evidentiary error is limited to the question of whether the trial court's ruling was a clear abuse of its discretion. "We will make every reasonable presumption in favor of upholding the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 272 Conn. 515, 542, 864 A.2d 847 (2005).

During the state's case-in-chief, the father, speaking through an interpreter because he did not speak English, recounted the events that led to his injury. An underlying thread in the defendant's appeal is the implied representation that linguistic confusion on the part of the father contributed to the defendant's conviction. The record does not bear out this contention.

In his cross-examination of his father, the defendant attempted to challenge the accuracy of his father's recall in a number of respects. Although the trial court limited some of the questioning, the defendant was permitted to ask his father whether he had been drinking that night, which he denied. The defendant also was able to elicit the fact that his father had spoken with Daniel Rodriguez, a Spanish speaking investigator, and to question him about the contents of that conversation. His father, however, vigorously resisted the suggestion that he had told the investigator that he had no recollection of that evening and that spirits had told him what had happened.[1]

The defendant then sought to introduce into evidence the testimony of Rodriguez himself "to impeach the credibility of the alleged victim in this case." Referring the court to § 6-4 of the Connecticut Code of Evidence, the defendant proposed "to ask Mr. Rodriguez to discuss his interview in depth with regard to Mr. Quiles, Sr." That testimony was necessary, he asserted, because his father's statements to the investigator were "wildly different from his testimony yesterday." After the trial court sustained the state's objection, the defendant decided not to call the investigator to testify. The trial court sustained the state's objection that this evidence was inadmissible as an inconsistent statement because it was hearsay. The state no longer relies on that ground.

The state now maintains that the court's ruling, nonetheless, was not an abuse of its discretion because,

---

[1] "Q. . . . Did you tell him that the spirits told you what happened that evening and that you didn't remember anything?

"A. No sir, you're making those things up. That's not what happened.

"Q. Sir, didn't you also tell him that you walked into the bathroom and slipped there and fell? What's your answer, sir?

"A. I haven't said that I slipped.

"Q. You never told anyone that, you never told the nurses at Yale that?

"A. Neither."

in the absence of direct testimony by Rodriguez, the defendant did not provide a proper foundation for this testimony. We agree with the state that it was not enough to elicit the father's generic disagreement with what he allegedly had told the investigator. See *State v. Daniels*, 83 Conn. App. 210, 214, 848 A.2d 1235, cert. denied, 270 Conn. 913, 853 A.2d 528 (2004). We uphold the court's evidentiary ruling on this alternate ground, which is supported in the trial court record. *State v. Vines*, 71 Conn. App. 359, 366–67, 801 A.2d 918, cert. denied, 261 Conn. 939, 808 A.2d 1134 (2002); see also *Favorite v. Miller*, 176 Conn. 310, 317, 407 A.2d 974 (1978) (where court "reaches a correct decision but on mistaken grounds, [our Supreme Court] has repeatedly sustained the trial court's action if proper grounds exist to support it").

Anticipating the possibility that he cannot prevail on this claim as an evidentiary error, the defendant further argues that the trial court's ruling was so central to the case that he was deprived of his constitutional right to present a defense. The record does not substantiate this claim. We do not know why the defendant chose not to call his investigator to testify. The court cannot, however, be faulted for that decision.[2] The record discloses that the defendant was able to cross-examine the father at length. In addition, there was considerable, albeit contested, medical testimony in support of the father's contention that he had indeed been thrown on the floor. The defendant has not been deprived of his constitutional right to a fair trial.

## II

The defendant's second argument for reversal of the judgment against him is that the trial court improperly

[2] Indeed, the court informed the defendant: "[I]f you wish to call [the investigator] for the purpose of examining him about the current and any observations that he had of the alleged victim at the time of the March 5, 2004 interview, I would allow that."

refused his motion for disclosure of the mental health records of the father when he was an inpatient at the Yale-New Haven Psychiatric Institute (Yale) from 1999 to 2000. The court undertook to inspect these records in response to an appropriate request by the defendant.

The court refused to override the presumption of privilege for the communications between the father and the Yale psychologists, psychiatrists and case workers who attended to him from about 1999 until about 2000. It observed that nothing in the records "would have any bearing on the ability of [the father] to testify as to the events of June 25, 2003, which are the subject of this particular prosecution. Nor do I find anything in those reports which would bear on his ability to be capable of testifying and accurately recalling . . . the events."

The ground rules that govern the disclosure of presumptively privileged psychiatric communications are well established. "Once the trial court has made its inspection, the court's determination of a defendant's access to the witness' records lies in the court's sound discretion, which we will not disturb unless abused. . . . [T]he linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality and disclosing them to the defendant in order to protect his right of confrontation." (Citations omitted; internal quotation marks omitted.) *State* v. *Patterson*, 276 Conn. 452, 490, 886 A.2d 777 (2005).

Our examination of the records subpoenaed by the defendant persuades us that the trial court's assessment of their contents cannot be faulted. At best, the medical records shed some light on the status of the father's mental health as it related to his use of alcohol when he was briefly hospitalized in 1999. We agree with the

trial court that the information contained in those records does not illuminate the father's ability to understand what transpired on the night of June 25, 2003, or to report on that event at the trial some nine months subsequent thereto.

Contrary to the assertion in the defendant's appellate brief, the record is clear that denying him access to the medical records did not impair his ability to inquire at trial about whether alcohol played a role in the father's injuries or his testimony. Such questions were put not only to the father himself, but also to a Spanish speaking police officer and various medical personnel. All that remains of the defendant's argument is his contention that the father appeared to be confused in his conversation with the defendant's investigator, but, as we have already held, the trial court properly excluded evidence of that conversation.

In sum, we conclude that the trial court did not abuse its discretion in making the two evidentiary rulings that the defendant has specifically challenged in this appeal. Notably, the defendant has not claimed that the state presented insufficient evidence to sustain his conviction. We are not persuaded by the defendant's unsupported, generalized claims that his conviction was unfair.

The judgment is affirmed.

In this opinion the other judges concurred.