******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

KEITH MANSON *v.* DANIEL CONKLIN ET AL.
(AC 41672)

Lavine, Prescott and Bright, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant police officer, C, and the defendant city of New Haven for, inter alia, negligence in connection with injuries he sustained when he collided with C's police cruiser while riding his dirt bike on a municipal street. In response to the plaintiff's complaint, the defendants alleged a number of special defenses, including that the plaintiff's claims were barred by governmental immunity because C was engaged in discretionary acts at the time of the accident. Prior to trial, the defendants filed a motion in limine to preclude the admission of any impeachment evidence relating to prior alleged misconduct by C. The plaintiff filed an objection to which he attached copies of three internal affairs reports authored by the New Haven Police Department, which described three instances in which C had engaged in misconduct and dishonesty during interactions with the public and then had misrepresented the nature of those interactions in official police reports or in response to internal affairs investigations. The trial court granted the defendants' motion in limine with respect to the internal affairs reports and the information contained therein. Following trial, the jury returned a verdict in favor of the defendants. On the verdict form, the jury indicated that the plaintiff had failed to prove by a fair preponderance of the evidence that C or the city was negligent. Thereafter, the trial court rendered judgment in accordance with the verdict, and the plaintiff appealed to this court. *Held*:

1. Contrary to the plaintiff's claim, the trial court properly precluded the admission of the findings and conclusions by the police department in the internal affairs reports that C had engaged in misconduct and was dishonest; those findings and conclusions constituted extrinsic evidence of alleged prior misconduct because they reflected the opinions of the police department that C had acted untruthfully, and, therefore, pursuant to our Supreme Court's decision in *Weaver* v. *McKnight*, (313 Conn. 393), they were inadmissible and properly excluded.

2. The plaintiff could not prevail on his claim that the trial court improperly submitted the issue of governmental immunity to the jury, which was based on his contention that the question of whether C's actions were ministerial or discretionary was not a factual question for the jury but, rather, was a legal issue to be decided by the court; it was unnecessary for this court to reach that question, as the plaintiff could not demonstrate that he suffered any harm by the submission of the issue of governmental immunity to the jury because the jury found that C was not negligent and, therefore, it was not necessary for the jury to reach that issue.

Argued December 4, 2019—officially released April 21, 2020

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Markle, J.*, granted the defendants' motion to preclude certain evidence; thereafter, the matter was tried to the jury before *Markle, J.*; verdict and judgment for the defendants, from which the plaintiff appealed to this court. *Affirmed.*

*Matthew D. Popilowski*, with whom, on the brief, was *John F. Riley, Jr.*, for the appellant (plaintiff).

*Alyssa S. Torres*, assistant corporation counsel, for

the appellees (defendants).

*Opinion*

PRESCOTT, J. The plaintiff, Keith Manson, appeals from the judgment of the trial court, rendered following a jury trial, in favor of the defendants, Daniel Conklin and the city of New Haven (city). The plaintiff brought the underlying negligence action against the defendants seeking compensation for damages he allegedly sustained when he collided with Conklin's police cruiser while riding his dirt bike on a municipal street. On appeal, the plaintiff claims that the court improperly (1) precluded him from impeaching Conklin about findings regarding his veracity made by his employer during unrelated internal affairs (IA) investigations and (2) submitted the issue of governmental immunity to the jury. We disagree with the plaintiff and, accordingly, affirm the judgment of the trial court.

The following procedural history and facts that the jury reasonably could have found are relevant to the plaintiff's claims on appeal. On April 1, 2013, at approximately 10:49 a.m., the plaintiff was riding his dirt bike east on Flint Street in New Haven. At the same time, Conklin, an on-duty New Haven police officer, was driving his marked police cruiser west on Flint Street, in the opposite direction in which the plaintiff was traveling. As Conklin drove down Flint Street, he observed a father with his young child playing in the street. To provide sufficient space to safely pass the child and his father, Conklin pulled his cruiser away from them toward the middle of the road.

As Conklin slowly was maneuvering his cruiser toward the middle of the road, the plaintiff continued east on Flint Street at a high rate of speed, eventually cresting a hill at the top of the street. Shortly after cresting the hill, the plaintiff collided with the front fender of Conklin's cruiser, and the plaintiff fell off of his bike, bleeding and in pain. Conklin called an ambulance. He then approached the plaintiff and placed him in handcuffs because he was combative. The ambulance transported the plaintiff to Yale New Haven Hospital where he required immediate surgery for a fractured kneecap, which required the removal of a rod in his leg from a prior car accident.

On April 1, 2015, the plaintiff commenced the present action against the defendants. The plaintiff filed, on November 15, 2017, the operative three count amended complaint. In count one of that complaint, the plaintiff alleged negligence against Conklin; in count two, he sought indemnification from the city pursuant to General Statutes § 7-465;[1] and, in count three, he alleged negligence against the city pursuant to General Statutes § 52-577n.[2]

In response, the defendants, on February 1, 2018, filed their operative answer and special defenses. The defendants alleged by way of special defenses that (1)

the plaintiff's injuries were caused by his own comparative negligence, (2) Conklin, as a government employee, is entitled to qualified immunity, (3) as to Conklin, the accident was unavoidable, and (4) the plaintiff's claims were barred by governmental immunity pursuant to § 52-557n because Conklin was engaged in discretionary acts.

The case was tried to a jury over the course of two days. Following the close of evidence and prior to the submission of the case to the jury, the parties met with the court to review proposed jury instructions. The parties disagreed on whether Conklin's actions were discretionary or ministerial for purposes of a jury charge on the doctrine of governmental immunity. The court concluded that it was appropriate to charge the jury on the doctrine of governmental immunity by providing the jury examples of duties that were ministerial and discretionary because doing so would help the jury understand the charge.

Thereafter, the court charged the jury, and the case was submitted to the jury for a verdict. In addition to a verdict form, the court provided the jury with interrogatories. The interrogatories asked, in relevant part: "Did the plaintiff prove by a fair preponderance of the evidence that . . . Conklin was negligent in one or more of the ways as alleged?" The jury was instructed to respond either yes or no.

On the same day, the jury returned a verdict in favor of the defendants. With respect to the interrogatory asking whether the plaintiff had established that Conklin was negligent, the jury answered no, and it did not answer any other interrogatories in accordance with the instructions on the form. The jury then completed the verdict form, indicating that the plaintiff had failed to prove by a fair preponderance of the evidence that Conklin or the city was negligent. The court rendered judgment in favor of the defendants in accordance with the jury's verdict. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The plaintiff first claims that the court improperly precluded him from impeaching Conklin about the findings and conclusions contained in unrelated IA investigative reports regarding alleged misconduct and dishonesty he previously had engaged in as a police officer and his lack of veracity in responding to those allegations. Although we conclude that the court properly excluded this evidence, we do so for somewhat different reasons than those stated by the court.[3]

The following facts and procedural history are relevant to this claim. Prior to the commencement of trial, the defendants filed a motion in limine to preclude the admission of any impeachment evidence relating to prior alleged misconduct by Conklin. Specifically,

the defendants, citing to §§ 4-3, 4-4, and 4-5 of the Connecticut Code of Evidence, sought to preclude the plaintiff from asking questions or admitting evidence regarding alleged misconduct engaged in by Conklin unrelated to the present case.

The plaintiff filed an objection to the motion in limine and appended to his objection copies of the three IA investigative reports authored by the New Haven Police Department (department).[4] In general, these reports describe three instances in which Conklin had engaged in misconduct and dishonesty during interactions with the public and then had misrepresented the nature of those interactions in official police reports or in response to the IA investigations. By way of example only, in one of the IA reports, Conklin is alleged to have improperly tampered with the driver's license of a suspect by removing the change of address sticker on the back of the license. In another report, Conklin is alleged to have illegally detained a person sitting in a parked car and to have misrepresented the facts regarding the detention in a police report.

The record is somewhat muddled regarding the precise evidentiary use the plaintiff hoped to make of these reports or the information contained in them. In the plaintiff's written objection to the defendants' motion in limine, the plaintiff at times appears to have argued that he intended to ask Conklin about the specific acts of misconduct in which Conklin allegedly engaged. In other words, the plaintiff's objection suggested that he merely sought to question Conklin about whether he, in fact, had engaged in the specific misconduct described in the IA reports such as removing the change of address sticker from the license of a driver. In doing so, the plaintiff referred to § 6-6 (b) (1) of the Connecticut Code of Evidence, which provides that "[a] witness may be asked, in good faith, about specific instances of conduct of the witness, if probative for the witness' character for untruthfulness."

Throughout his written objection, however, the plaintiff suggested that his true intent was to have admitted the actual findings and conclusions of the department regarding whether Conklin had engaged in misconduct and had lied about it. The plaintiff in his objection referred repeatedly to the "determinations" and "findings" made by the department regarding Conklin's conduct.

On April 26, 2018, the court heard argument on the motion in limine. During the hearing, the plaintiff's counsel and the court engaged in a colloquy regarding the IA reports and the uses the plaintiff wanted to make of the reports or the information contained within them. Counsel informed the court that he wanted to question Conklin about the IA reports, specifically, the investigator's findings of dishonesty. During the same colloquy, counsel further stated that "[t]he bad behavior, *in and*

*of itself*, isn't something I necessarily need to or plan to get involved in. It's as you read the full order for the findings of the IA board, implicit in there is an understanding that [Conklin] was not exactly truthful in his explanations of his behavior. . . . When the IA board *makes a conclusion*, which inherent in that decision is that they don't believe . . . Conklin, to me that certainly is fair game as far as truthfulness of the party who will be a witness." (Emphasis added).

The plaintiff's counsel conceded that he was not offering the IA reports themselves: "I don't think under the law I would be allowed to offer them as extrinsic evidence. I just want to be allowed to inquire. . . . I'm assuming he's going to be honest when I ask him has he been, for instance, *disciplined* by his department for destroying evidence." (Emphasis added.)

During its colloquy with the plaintiff's counsel, the court appears to have understood his argument to be that he had a right to question Conklin about the findings and conclusions of the department, rather than asking Conklin directly whether he had engaged in the misconduct. The court stated in part: "It's the IA board making fact findings . . . it's just finding one person's statement more credible than the other." Counsel then rebutted the court's statement by claiming that the board was "[m]aking a conclusion." After the colloquy, the court reserved its ruling on the motion in limine until May 1, 2018, indicating that it would review the exhibits and the relevant rules of evidence.

On May 1, 2018, the morning on which the evidentiary portion of the trial was set to begin, the court granted the motion regarding the IA reports and the information contained within them. The court stated: "[A]fter reviewing the alleged misconduct evidence, I find that insufficient to be probative of the witness' truthfulness . . . in this action wherein the allegations simply involve negligence. I also find that the probative value, after taking into consideration the nature or the type of proceedings and the findings that were made, including the findings that certain training and rules were not abided to, I [find] that the probative value is outweighed by the unfair prejudice in the sense that it would unduly [arouse] the emotions or prejudice against the defendant in this case and . . . I believe in addition . . . that we are going [to] get off track and get into minitrials about what those hearings were about, who made the allegations, who were the supporting witnesses, and we are going to get off the path."[5]

On appeal, the plaintiff, in his brief, again asserts that the court improperly precluded the admission of the conclusions and findings by the department that Conklin had engaged in misconduct and was dishonest, rather than evidence of the misconduct itself. The plaintiff does not argue that the court improperly prevented him from asking Conklin whether he had engaged in

certain misconduct or dishonesty but, instead, he argues that the court should have permitted him to ask Conklin whether the department had so found. On the basis of this record, we conclude that the sole issue before us is whether the findings and conclusions of the department that the Conklin had engaged in misconduct and was dishonest should not have been precluded by the court.

We first set forth our standard of review. "To the extent [that] a trial court's admission of evidence is based on an interpretation of [our law of evidence], our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. . . . Thus, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling[s] [on these bases] . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did." (Internal quotation marks omitted.) *Weaver* v. *McKnight*, 313 Conn. 393, 426, 97 A.3d 920 (2014).

Although not relied on by the court or the defendants on appeal, we conclude that our Supreme Court's decision in *Weaver* is dispositive of this question. In *Weaver*, the mother of a stillborn infant brought a negligence action against her gynecologist and his medical group. Id., 396. During trial, the court allowed the defendants to question the plaintiffs' expert witness regarding a censure that he had received from a voluntary membership organization. Id., 418. The censure included the organization's determination that the expert had violated the organization's rules of conduct. Id., 427. Our Supreme Court concluded that the determinations in the censure amounted to extrinsic evidence of alleged prior misconduct and, thus, were inadmissible. Id., 432.

In so concluding, our Supreme Court recognized that although the Connecticut Code of Evidence generally prohibits the use of character evidence to prove that a person has acted in conformity with a character trait on a particular occasion, one significant exception permits the admission of evidence of a witness' character for untruthfulness to impeach the credibility of the witness. Id., 426. "One method for impeaching a witness' credibility allows a party to cross-examine a witness about the witness' prior misconduct (other than a felony conviction, which is governed by other rules), subject to certain limitations: First, cross-examination may only extend to specific acts of misconduct other than a fel-

ony conviction if those acts bear a special significance upon the issue of veracity . . . . Second, [w]hether to permit cross-examination as to particular acts of misconduct . . . lies largely within the discretion of the trial court. . . . Third, extrinsic evidence of such acts is inadmissible. . . . Conn. Code Evid. § 6-6 (b) (2). Under these limitations, the only way to prove misconduct of a witness for impeachment purposes is through examination of the witness. . . . The party examining the witness must accept the witness' answers about a particular act of misconduct and may not use extrinsic evidence to contradict the witness' answers." (Citation omitted; internal quotation marks omitted.) *Weaver* v. *McKnight*, supra, 313 Conn. 426–27.

After citing these general principles, the court turned to the more difficult issue presented in *Weaver*, namely, "whether the prohibition on extrinsic evidence precludes cross-examination of the witness about another's determination that the witness acted untruthfully." Id., 427–28. Our Supreme Court indicated that it had "not been pointed to, and [was] not aware of, any [appellate] cases from this state directly addressing this question," but that "[c]ommentators and courts in other jurisdictions have addressed this question and generally have concluded that 'counsel should not be permitted to circumvent the no-extrinsic-evidence provision by tucking a third person's opinion about prior acts into a question asked of the witness who has denied the act.' S. Saltzburg, 'Trial Tactics: Impeaching the Witness: Prior "Bad Acts" and Extrinsic Evidence,' 7 Crim. Just. 28, 31 (Winter 1993)." *Weaver* v. *McKnight*, supra, 313 Conn. 428.

The court in *Weaver* noted that the Federal Rules of Evidence and cases interpreting them do not permit a party to introduce findings or determinations by a third party that a witness has engaged in misconduct or dishonesty. "The Third Circuit Court of Appeals squarely addressed this issue in *United States* v. *Davis*, 183 F.3d 231, 257 n.12 (as amended by slip opinion, 197 F.3d 662, 663 n.1 (3d Cir.1999), and concluded that, during cross-examination of a police officer, the government cannot make reference to [the witness'] forty-four day suspension or *that Internal Affairs found that he lied about the* [*prior*] *incident.* The government needs to limit its [cross-examination] to the facts underlying those events. . . . If he denies that such events took place, however, the government cannot put before the jury evidence that he was suspended *or deemed a liar by Internal Affairs.* . . .

"Professor Colin C. Tait and Judge Eliot D. Prescott, in their treatise about Connecticut evidence law, also agree that a witness cannot be asked about the opinions of others regarding the alleged misconduct. C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 6.32.5, p. 362. They refer to this court's decision in

*State* v. *Bova*, [240 Conn. 210, 690 A.2d 1370 (1990)], as an example. In *Bova*, the court upheld a trial court's decision to preclude a party from asking a police officer about another case in which a judge commented that another witness was more credible than the police officer. . . . This court concluded that the judge's comment in the other case did not meet the first requirement for admitting misconduct testimony because the judge made no express finding that the officer lied, and therefore the comment did not sufficiently relate to the officer's credibility. . . . Professor Tait and Judge Prescott go further in their treatise, explaining that counsel could not have asked the officer about the judge's comment [e]ven if the judge had found that the officer lied as a witness [because] that finding is not a conviction of perjury. Such conduct, not being a conviction, can be proved only by questions addressed to the witness, i.e., Did you lie in case X? If the witness denies such misconduct, the questioner must take the [witness'] answer and cannot introduce extrinsic evidence. C. Tait & E. Prescott, supra, p. 362." (Citations omitted; emphasis altered; footnote omitted; internal quotation marks omitted.) *Weaver* v. *McKnight*, supra, 313 Conn. 429–30.

In the present case, the conclusions and findings contained within the IA reports constitute extrinsic evidence of alleged prior misconduct because they reflect the opinions of the department that Conklin acted untruthfully. Although the plaintiff would have been permitted to question Conklin about his misconduct, he would have been precluded from offering extrinsic evidence of that misconduct if denied by Conklin. The plaintiff could not circumvent these rules by questioning Conklin about the conclusions and findings contained in the reports. Although the court in the present case appears to have precluded the evidence proffered by the plaintiff on somewhat different grounds, we conclude that the exclusion of the evidence was dictated by our Supreme Court's decision in *Weaver*, and we affirm the ruling on that basis.[6]

## II

We next address the plaintiff's claim that the court improperly submitted the issue of governmental immunity[7] to the jury. Specifically, the plaintiff argues that the dispute over whether the actions of Conklin were ministerial or discretionary was not a factual question for the jury but, instead, was a legal issue to be decided by the court.

We conclude that it is unnecessary to reach this question because the plaintiff cannot demonstrate that he suffered any harm by the court's submission of the issue of governmental immunity to the jury. Before deciding whether governmental immunity applied, the jury first had to determine whether the municipal employee was negligent. Here, the jury did not find Conklin negligent.

During oral argument before this court, the plaintiff conceded that he cannot show harm because the jury found that Conklin was not negligent and, thus, it was not necessary for the jury to reach the question of whether the defendants enjoyed immunity for negligent acts. Accordingly, this claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 7-465 allows an action for indemnification against a municipality in conjunction with a common-law action against a municipal employee; *Gaudino* v. *East Hartford*, 87 Conn. App. 353, 356, 865 A.2d 470 (2005); and provides in relevant part: "Any town, city, or borough . . . shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded . . . if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment . . . ."

[2] General Statutes § 52-557n provides in relevant part: "(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . ."

[3] If evidence would have been admissible or excludable on a ground other than that relied on by the trial court, we may affirm the evidentiary ruling on that alternative ground. See, e.g., *State* v. *Vines*, 71 Conn. App. 359, 366–67, 801 A.2d 918 ("even if the trial court did not engage in the proper inquiry as to the admissibility of evidence, we are mindful of our authority to affirm a judgment of a trial court on a dispositive alternat[ive] ground for which there is support in the trial court record" (internal quotation marks omitted)), cert. denied, 261 Conn. 939, 808 A.2d 1134 (2002).

[4] Although the plaintiff never asked the court to mark the reports as exhibits for identification purposes, the reports are contained in the trial court record.

[5] We understand the court's ruling, therefore, to hinge on its conclusion that the IA reports did not describe misconduct that bore on Conklin's veracity. Although we differ with that assessment, the court's decision to exclude the evidence was proper, albeit for different reasons that we discuss herein. We also disagree with the court's ruling to the extent that it may be read to suggest that, because the case only involved allegations of negligence, Conklin's veracity was somehow not at issue. Conklin was obviously a critical eyewitness to the accident and, as one of the defendants, had a substantial stake in the outcome of the case.

[6] In light of this conclusion, it is unnecessary to address the plaintiff's claim that the court improperly relied on § 4-3 of the Connecticut Code of Evidence by finding that the evidence's probative value was outweighed by the danger of its unfair prejudice before determining under which section of the Connecticut Code of Evidence the evidence should have been classified.

[7] "The [common-law] doctrines that determine the tort liability of municipal employees are well established. . . . Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Violano* v. *Fernandez*, 280 Conn. 310, 318, 907 A.2d 1188 (2006).