******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* MICHAEL BRYANT BOUVIER
## (AC 42430)

Prescott, Moll and Suarez, Js.

*Syllabus*

The defendant, who was convicted of operating a motor vehicle while under the influence of intoxicating liquor and reckless driving, and whose sentence was enhanced for twice previously having been convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs, appealed to this court. The entirety of the motor vehicle stop that led to his arrest was recorded by a camera in the arresting state trooper's vehicle, although the audio recording was briefly interrupted when the trooper, K, temporarily turned off the microphone on his uniform, to speak with a second trooper, Q. The defendant claimed that the trial court improperly denied his motion to suppress certain statements he made to the police during a postarrest interview, as he claimed he had not voluntarily, knowingly and intelligently waived his rights under *Miranda* v. *Arizona* (384 U.S. 436), denied his motion to preclude the testimony of the arresting state troopers as a sanction for K having turned off his microphone, and sustained the state's objection to questions regarding a finding by a hearing officer of the Department of Motor Vehicles that no probable cause existed to arrest the defendant. *Held*:

1. The defendant could not prevail on his claim that the trial court erred in denying his motion to suppress his statements to the police during his postarrest interview: the court properly determined that the defendant had been advised of his *Miranda* rights before he made his statements in response to police interrogation, the defendant having previously conceded that he was advised of his rights both while being transported to the police station and while at the station and the defendant failed to challenge the first advisement as invalid, thus, the defendant conceded that he was taken into custody, properly advised of his rights prior to interrogation, remained silent, and later decided to speak during interrogation; moreover, the court properly determined that the defendant implicitly had waived his *Miranda* rights voluntarily, knowingly and intelligently prior to making statements to the police, as it reasonably could be inferred that the defendant understood his right to remain silent, as he did so after K initially advised him of his rights, and, at the police station, he was again advised of his rights as well as the consequences of refusing a Breathalyzer test, which he acknowledged; furthermore, the defendant's knowledge of his rights from his two prior arrests further supported the court's conclusion that he understood those rights, as did the defendant's course of conduct in voluntarily answering multiple questions by the police and declining the opportunity to contact an attorney after it had been offered to him.

2. The trial court did not abuse its discretion in denying the defendant's motion in limine, in which he sought either to preclude the testimony of K and Q or an instruction permitting the jury to draw an adverse inference against the state because K intentionally had turned off his body camera during the traffic stop, as K's action did not constitute a failure to preserve evidence or the destruction of evidence: the evidence before the court showed that K had acted in a manner that failed to create an audio recording, thus, evidence consisting of such a recording did not actually exist; moreover, the defendant failed to cite to any authority demonstrating that the troopers had a legal duty to record their conversation at the scene of the motor vehicle stop, as the administrative guidelines cited by the defendant did not create a cognizable due process interest in the defendant, and the court made no finding that the troopers actually violated those guidelines.

3. The defendant could not prevail on his claim that the trial court erred in sustaining the state's objection to questions defense counsel asked K regarding a finding by a hearing officer of the Department of Motor Vehicles that no probable cause existed to arrest the defendant: the

court properly did not admit the hearing officer's finding of no probable cause to permit the defendant to impeach the arresting officers' credibility as the finding constituted extrinsic evidence, and defense counsel properly was permitted to, and did, cross-examine the arresting officers regarding their administration of field sobriety tests; moreover, the defendant's unpreserved claim that the hearing officer's finding was relevant and admissible to prove that no probable cause existed to arrest the defendant was not reviewable pursuant to the second prong of *State* v. *Golding* (213 Conn. 233) because the claim was purely evidentiary in nature and not of constitutional magnitude; furthermore, even if this court were to reach the merits of the defendant's claim, the finding, if offered to prove that there was no probable cause to arrest the defendant, would be inadmissible, as probable cause to arrest the defendant was not an element of either of the offenses on which the defendant was tried, thus, the finding was not material to the jury's determination of the case before it.

Argued April 5—officially released December 7, 2021

*Procedural History*

Two part substitute information charging the defendant, in the first part, with the crimes of operating a motor vehicle while under the influence of intoxicating liquor and reckless driving, and, in the second part, with twice previously having been convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs, brought to the Superior Court in the judicial district of Hartford, geographical area number fourteen, where the court, *D'Addabbo, J.*, denied the defendant's motion in limine to preclude certain testimony; thereafter, the court denied the defendant's motion to suppress certain evidence; subsequently, the first part of the information was tried to the jury before *D'Addabbo, J.*; verdict of guilty; thereafter, the defendant was tried to the court, *D'Addabbo, J.*, on the second part of the information; finding of guilty; judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Patrick Tomasiewicz*, for the appellant (defendant).

*Felicia Valentino*, special deputy assistant state's attorney, with whom, on the brief, were *Sharmese Walcott*, state's attorney, and *Denise Smoker* and *Robert Diaz*, senior assistant state's attorneys, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Michael Bryant Bouvier, appeals from the judgment of conviction, rendered following a jury trial, of operating a motor vehicle while under the influence of alcohol in violation of General Statutes § 14-227a (a) (1) and reckless driving in violation of General Statutes § 14-222. He also appeals from the judgment of conviction, following a trial to the court on a part B information, of being a third time offender in violation of § 14-227a (g) (3). The defendant claims that the trial court improperly (1) denied his motion to suppress statements he made to the police during a postarrest interview because he allegedly had failed to voluntarily, knowingly, and intelligently waive his *Miranda* rights[1] prior to responding to questioning, (2) denied his motion in limine that sought to preclude the testimony of the arresting state troopers as a sanction for one of the troopers having turned off his body microphone during the motor vehicle stop, and (3) sustained the state's objection to questions regarding a finding made by a Department of Motor Vehicles hearing officer that no probable cause existed to arrest him. We affirm the judgment of the court.

The jury reasonably could have found the following facts. During the early morning hours of June 1, 2017, Trooper Thomas Krynski of the Connecticut State Police was on duty patrolling Interstate 84 in the Hartford and West Hartford areas. The roadway was wet due to rain. At approximately 12:43 a.m., Krynski was operating his police cruiser near exit 46 when he observed in his mirror a car approaching in the left center lane. The car passed Krynski at approximately eighty miles per hour, far in excess of the fifty mile per hour speed limit. Krynski followed the car for approximately three miles, during which time he observed the driver making lane changes to pass other vehicles without using his turn signal, drifting from one lane to another, and not staying within a designated lane. When the car exited the highway at exit 42, Krynski followed and observed the car fail to stop at the stop sign located at the end of the exit ramp. At that time, Krynski initiated a traffic stop using his cruiser's lights and siren.

Krynski approached the driver's side window of the car and asked the driver, who was the sole occupant of the car, for his license, registration, and proof of insurance. The paperwork identified the driver as the defendant. Krynski observed that the defendant had glassy and bloodshot eyes, and he detected an odor of alcohol coming from the car. Krynski decided to conduct a preliminary sobriety test. He asked the defendant to follow his finger with his eyes and observed that the defendant's eyes were "jerking." He asked the defendant if he had had anything to drink, and the defendant responded, "Nothing." He next asked the defendant to step out of the car so that he could conduct the

preliminary eye test a second time. Krynski again noted "jerkiness" in the defendant's eyes. When asked, the defendant stated that he was coming from his girlfriend's house in Hartford.

Krynski returned to his cruiser to request back up so that he could conduct standardized field sobriety tests. Shortly thereafter, Trooper Michael Quagliaroli arrived in his cruiser on the scene. Krynski administered three separate field sobriety tests: the horizontal gaze nystagmus test, the walk and turn test, and the one leg stand test. The administration of the sobriety tests was recorded by the dashboard camera on Krynski's cruiser, the audio for which was captured by a microphone worn by Krynski on his uniform. On the basis of his observations of the defendant's performance of the field sobriety tests, Krynski determined that none was performed to standard.

Krynski then approached Quagliaroli to speak to him. While doing so, Krynski turned off his body microphone for less than one minute. During this time, the video recording nevertheless continued. While the microphone was off, the two troopers discussed whether a sufficient basis to arrest the defendant existed, as well as whether they should leave his car on the street or have it towed. They ultimately concluded that the defendant should be arrested, and they placed him under arrest and transported him in a cruiser to the police station.

During the drive to the police station, Krynski orally advised the defendant of his *Miranda* rights. At the police station, Krynski brought the defendant into the booking area at which time he again advised the defendant of his *Miranda* rights, this time reading from a form. Krynski next explained the Breathalyzer testing process and the consequences of a refusal and asked the defendant to submit to a Breathalyzer test. The defendant refused the test and declined an opportunity to speak to a lawyer. Krynski called in another trooper to witness the defendant's refusal. After Krynski again advised the defendant of the test and his right to refuse, the defendant refused to submit to the Breathalyzer test. Krynski then asked the defendant a series of questions listed on a postarrest interview form. When asked whether he had been drinking prior to his arrest, the defendant responded that he drank beer earlier in the evening at the Pig's Eye Pub in Hartford, but had stopped around 11 p.m. after consuming two, twenty-three ounce beers.

The state charged the defendant with operating under the influence of alcohol (OUI) and reckless driving. The state also charged the defendant in a part B information with being a third time OUI offender in violation of § 14-227a (g) (2) and (g) (3). Following a trial, a jury found the defendant guilty of both OUI and reckless driving. The defendant waived his right to a jury trial

regarding the part B information, which then was tried to the court. The court, *D'Addabbo, J.*, found the defendant guilty of being a third time OUI offender. The court subsequently imposed on the defendant a total effective sentence of three years of incarceration, suspended after twenty months, followed by three years of probation. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion to suppress the statements he gave to the police during his postarrest interview. The defendant specifically argues that the evidence establishes that Krynski failed to advise the defendant of his *Miranda* rights at the station before questioning him. The defendant additionally argues that the court improperly determined that he implicitly had waived his *Miranda* rights prior to speaking with the police. We are not persuaded.

The following procedural history is relevant to our resolution of this claim. The evidence portion of the trial commenced on October 15, 2018. The state asked Krynski on direct examination whether he had asked the defendant any questions after the defendant had declined to submit to the Breathalyzer test. Krynski listed a series of processing questions from a postarrest interview form that he had asked the defendant, including questions concerning the defendant's height, weight, social security number, address, and phone number. Krynski also testified that, in addition to the processing questions, there was "another section" of the postarrest interview form. The defendant objected, and the jury was excused. The defendant requested an offer of proof, and the state explained that it had planned to elicit from Krynski the answers the defendant had given to certain questions from the postarrest interview form, including that the defendant had consumed two, twenty-three ounce beers at the Pig's Eye Pub.

The defendant argued that the admission of his answers regarding his alcohol consumption violated his constitutional rights under *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and *State* v. *Ferrell*, 191 Conn. 37, 463 A.2d 573 (1983). The defendant asserted that he did not waive his *Miranda* rights because he did not sign a *Miranda* waiver form before the arresting officers questioned him.

During a recess on October 15, 2018, the defendant filed a corresponding written motion to suppress the statements he had made after his arrest and while in police custody,[2] and, outside the presence of the jury, the court heard testimony from Krynski as well as argument from both parties. On October 16, 2018, the court orally denied the defendant's motion to suppress the

statements and later issued a written decision on the motion, dated December 21, 2018.

The court found the following facts in connection with the defendant's motion to suppress. Krynski first orally advised the defendant of his *Miranda* rights in the cruiser, shortly following his arrest. He was not questioned at that time.

At the station, and after advising the defendant of his *Miranda* rights for the second time, Krynski asked the defendant a series of questions printed in section D, titled "Post Arrest Interview," of the Officer's OUI Arrest and Alcohol Test Refusal or Failure Report form. Krynski asked the defendant, inter alia, how much alcohol he had consumed, what type of alcohol he had consumed, and where the defendant had been drinking on May 31, 2017. The defendant responded that he had consumed alcoholic beverages at a local bar.[3]

The court determined that the defendant was in custody at the time that he had made the statements and that the statements were elicited as a result of interrogation by the police. Accordingly, the court reasoned that the statements would be admissible only if the defendant had been advised properly of his *Miranda* rights before making them and knowingly and voluntarily had waived those rights.

The court found that the defendant had been advised of his *Miranda* rights twice prior to questioning: once in the cruiser, and again later at the station. The court also found that the defendant did not explicitly waive his *Miranda* rights orally or in writing.[4] Nonetheless, the court found that the defendant implicitly had waived his right to remain silent by voluntarily responding to the questions posed to him by Krynski. In so concluding, the court gave weight to the defendant's decision to remain silent on his initial advisement, his indication to Krynski that he understood his rights both generally and as they related to his decision to refuse the Breathalyzer test, and his familiarity with being arrested during his prior arrests. The court also noted that there was no evidence before it that indicated that the defendant's statements were coerced.

We begin by setting forth the applicable standard of review and governing legal principles. "Under our well established standard of review in connection with a motion to suppress, we will not disturb a trial court's finding of fact unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . ." (Internal quotation marks omitted.) *State* v. *Arias*, 322 Conn. 170, 176–77, 140 A.3d 200 (2016). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quo-

tation marks omitted.) *FirstLight Hydro Generating Co.* v. *Stewart*, 328 Conn. 668, 679, 182 A.3d 67 (2018). Generally, "[b]ecause it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Gianetti* v. *Norwalk Hospital*, 304 Conn. 754, 766, 43 A.3d 567 (2012). "[W]hen a question of fact is essential to the outcome of a particular legal determination that implicates a defendant's constitutional rights, [however] and the credibility of witnesses is not the primary issue, our customary deference to the trial court's factual findings is tempered by a scrupulous examination of the record to ascertain that the trial court's factual findings are supported by substantial evidence." (Internal quotation marks omitted.) *State* v. *Kendrick*, 314 Conn. 212, 222, 100 A.3d 821 (2014). "[When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Arias*, supra, 177.

"It is well established that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda* v. *Arizona*, [supra, 384 U.S. 444]. Two threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda*: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 302 Conn. 287, 294, 25 A.3d 648 (2011).

"Although [a]ny [police] interview of [an individual] suspected of a crime . . . [has] coercive aspects to it . . . only an interrogation that occurs when a suspect is in custody heightens the risk that statements obtained therefrom are not the product of the suspect's free choice. . . . This is so because the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements . . . . Thus, the court in *Miranda* was concerned with protecting defendants against interrogations that take place in a police-dominated atmosphere, containing inherently compelling pressures [that] work to undermine the individual's will to resist and to compel him to speak [when] he would not otherwise do so freely . . . . By adequately and effectively appris[ing] [a suspect] of his rights and reassuring the suspect that the exercise of those rights must

be fully honored, the *Miranda* warnings combat [the] pressures inherent in custodial interrogations." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Castillo*, 165 Conn. App. 703, 713–14, 140 A.3d 301 (2016), aff'd, 329 Conn. 311, 186 A.3d 672 (2018). Thus, if a suspect is in custody and has been subjected to police interrogation, "prior to the questioning, the suspect [must be] advised that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." (Internal quotation marks omitted.) *State* v. *Mangual*, 311 Conn. 182, 185 n.1, 85 A.3d 627 (2014), citing *Miranda* v. *Arizona*, supra, 384 U.S. 444.

A

The defendant first argues that the evidence plainly establishes that Krynski failed to advise the defendant of his *Miranda* rights at the station until after questioning him. To support this argument, the defendant asserts that the video evidence from the booking area at the station "undermines" Krynski's trial testimony that he read the defendant his rights from a form prior to questioning the defendant because the booking video allegedly fails to show Krynski reading from *any* form while in the booking area. Because he was not advised of his *Miranda* rights at the station, the defendant argues, the court improperly denied his motion to suppress the statements he made at the station.

This is not the argument the defendant made in the trial court. The defendant filed a motion for a new trial dated November 28, 2018, and the court heard argument on that motion on December 21, 2018. In his motion, the defendant made a different argument than the one he now raises on appeal: namely, the defendant argued that a "close review" of the booking video demonstrated that Krynski failed to *provide to the defendant a written advisement of rights* at the station until after he had questioned the defendant. Contrary to his position on appeal, the defendant conceded in his motion for a new trial that the second *Miranda* advisement occurred but claimed that the second advisement took place after the defendant had been interrogated—specifically, the second advisement occurred when Krynski provided to the defendant the written advisement of rights. The court denied the defendant's motion, characterizing the defendant's claims as "simpl[e] reiterations of arguments previously made during the trial [in support of a motion to suppress] and denied by the [trial] court."

"[I]t is not ordinarily the function of a reviewing court to make factual findings and . . . conclusions of fact may be drawn on appeal *only* where the subordinate facts found [by the trial court] make such a conclusion inevitable as a matter of law . . . or where the undisputed facts or uncontroverted evidence and testimony in the record make the factual conclusion so obvious as

to be inherent in the trial court's decision." (Emphasis added; internal quotation marks omitted.) *Gianetti* v. *Norwalk Hospital*, supra, 304 Conn. 762. On appeal, the defendant essentially argues that, when the court reviewed the booking video, it should have drawn an inference from the contents of the video that Krynski's testimony should not be credited because the video does not depict Krynski reading from a form. Put differently, the defendant argues that the court's interpretation of the booking video was clearly erroneous because the court failed to draw an inference from the video that is favorable to him. Moreover, it is also important to emphasize that the defendant never argued to the court that it should draw such an inference. Because "the function of [this court] is to review findings of fact, not make factual findings"; *State* v. *Wilson*, 111 Conn. App. 614, 621, 960 A.2d 1056 (2008), cert. denied, 290 Conn. 917, 966 A.2d 234 (2009); we decline to make findings of fact with respect to the defendant's alternative interpretation of the booking video.

More significantly, the defendant's argument that he was not advised of his *Miranda* rights at the police station is also unpersuasive because it fails to account for the fact that Krynski already had advised the defendant of his *Miranda* rights in the cruiser. The defendant admits that this first advisement in the cruiser took place before he was interrogated at the station. The defendant does not argue that Krynski's advisement in the cruiser was inadequate in any way, such that he was entitled to a readvisement of his *Miranda* rights. The defendant, for instance, does not assert that the *Miranda* advisement in the cruiser was deficient because the advisement failed to reasonably convey to him his rights. See, e.g., *State* v. *McMillion*, 128 Conn. App. 836, 837–42, 17 A.3d 1165 (considering adequacy of content of *Miranda* advisement), cert. denied, 302 Conn. 903, 23 A.3d 1243 (2011). Beyond characterizing the advisement in the cruiser as untimely without further argument or authority, the defendant did not argue before the trial court and does not argue on appeal that a sufficient amount of time passed between the advisement in the cruiser and the interrogation, such that the police were obligated to readvise the defendant of his *Miranda* rights before questioning him.[5]

Because the defendant has failed to challenge as invalid Krynski's advisement of the defendant's *Miranda* rights in the cruiser, the defendant concedes that he was taken into custody, properly advised of his *Miranda* rights prior to police interrogation, remained silent, and later decided to speak in response to police interrogation. We thus conclude that, regardless of whether Krynski advised the defendant of his *Miranda* rights at the station,[6] the court properly determined that the defendant had been advised of his *Miranda* rights before he made his statements in response to police interrogation.

B

The defendant next argues that the court improperly determined that he implicitly had waived his *Miranda* rights prior to speaking with the police. The defendant asserts that his decision to remain silent after being advised of his rights in the cruiser, then later to admit to consuming alcohol, did not constitute a valid waiver of his rights, particularly because Krynski had failed to ask the defendant explicitly whether he elected to waive his rights. We are not persuaded.

Because the defendant was subject to custodial interrogation, "any statements made by the [defendant] in response to the questioning will be suppressed unless, prior to the questioning, the [defendant] [was] advised" of his rights under *Miranda*; *State* v. *Mangual*, supra, 311 Conn. 185 n.1; and the defendant waived those rights. "[T]he accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused in fact knowingly and voluntarily waived [his *Miranda*] rights when making the statement." (Internal quotation marks omitted.) *State* v. *Christopher S.*, 338 Conn. 255, 278, 257 A.3d 912 (2021).

"To be valid, a [*Miranda*] waiver must be voluntary, knowing and intelligent. . . . The state has the burden of proving by a preponderance of the evidence that the defendant voluntarily, knowingly and intelligently waived his *Miranda* rights. . . . Whether a purported waiver satisfies those requirements is a question of fact that depends on the circumstances of the particular case." (Internal quotation marks omitted.) *State* v. *Andino*, 173 Conn. App. 851, 861, 162 A.3d 736, cert. denied, 327 Conn. 906, 170 A.3d 3 (2017). "Although the issue [of whether there has been a knowing and voluntary waiver] is . . . ultimately factual, our usual deference to fact-finding by the trial court is qualified, on questions of this nature, by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence." (Internal quotation marks omitted.) *State* v. *Cushard*, 164 Conn. App. 832, 838–39, 137 A.3d 926 (2016), aff'd, 328 Conn. 558, 181 A.3d 74 (2018).

"There is no requirement in our law that a valid *Miranda* waiver must be evidenced by a written waiver. [T]he state must demonstrate: (1) that the defendant understood his rights, and (2) that the defendant's course of conduct indicated that he did, in fact, waive those rights. . . . In considering the validity of [a] waiver, we look, as did the trial court, to the totality of the circumstances of the claimed waiver." (Internal quotation marks omitted.) *State* v. *Andino*, supra, 173 Conn. App. 861. "[A]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of

that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case . . . [and] in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." (Internal quotation marks omitted.) *State* v. *Cushard*, supra, 164 Conn. App. 839. For instance, a "defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver," may indicate that a defendant has waived his rights. (Internal quotation marks omitted.) *State* v. *Wilson*, 183 Conn. 280, 284, 439 A.2d 330 (1981).

Our review of the record indicates that the court properly determined that the defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights. To start, the court properly concluded that the defendant understood his rights. See *State* v. *Andino*, supra, 173 Conn. App. 861. After Krynski initially advised the defendant of his rights and asked him if he understood his rights, the defendant remained silent, from which it reasonably can be inferred that he understood his right to do so. See *State* v. *Hafford*, 252 Conn. 274, 296, 746 A.2d 150 (concluding that defendant's refusal to talk indicated defendant's understanding of right to remain silent), cert. denied, 521 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000).

Upon arrival at the station, the defendant once again was advised of his rights. He also was advised as to the consequences of refusing a Breathalyzer test, which he acknowledged. Each of these actions indicates the defendant's understanding of the rights he enjoyed. The defendant's prior criminal history further supports the court's conclusion that he understood the rights he maintained while under arrest. See *State* v. *Griffin*, 339 Conn. 631, 688,        A.3d        (2021) (noting that defendant's prior experience in criminal justice system indicated defendant's "[full] underst[anding] [of] the nature of his *Miranda* rights and the consequences of waiving (or never invoking) them"). As the record reflects, the defendant previously was arrested for OUI on two separate occasions, on February 1 and October 4, 2008. Accordingly, the totality of the circumstances indicate that the defendant understood his rights.

Additionally, the court properly determined that the defendant's course of conduct reflected a waiver of his rights. See *State* v. *Andino*, supra, 173 Conn. App. 861. The defendant voluntarily answered multiple questions concerning his whereabouts and his consumption of alcohol on May 31, 2017. The defendant was provided with, and declined, the opportunity to contact an attorney and, instead, answered the questions he was asked. "By speaking, the defendant has chosen unambiguously not to assert his right to remain silent." (Internal quotation marks omitted.) *State* v. *Silva*, 166 Conn. App. 255,

285, 141 A.3d 916, cert. denied, 323 Conn. 913, 149 A.3d 495 (2016), cert. denied, U.S. , 137 S. Ct. 2118, 198 L. Ed. 2d 197 (2017). Considering the totality of the circumstances, the court properly concluded that the defendant implicitly waived his rights prior to volunteering his statements in response to questioning.

For the foregoing reasons, we are not persuaded by the defendant's claim that he did not voluntarily, knowingly, and intelligently waive his rights under *Miranda* prior to responding to the postarrest interview form questions. Accordingly, we conclude that the court properly denied the defendant's motion to suppress the statements he made in response to police interrogation while in custody.

## II

The defendant next claims that the court improperly denied a motion in limine in which he sought to preclude the trial testimony of Krynski and Quagliaroli or, alternatively, an instruction permitting the jury to draw an adverse inference against the state because Krynski intentionally had turned off his body microphone for a period of time during the traffic stop. According to the defendant, Krynski's action prevented the audio recording of a conversation between Krynski and Quagliaroli that the defendant contends was potentially exculpatory. The state responds that the defendant's claim fails because Krynski's brief muting of his microphone did not constitute a failure to preserve evidence or the destruction of evidence as argued by the defendant.[7] We agree with the state that the defendant has failed to establish the factual predicate for a due process violation under either the state or federal constitution arising out of the alleged deprivation of potentially exculpatory evidence and that the court did not abuse its discretion by denying the motion in limine.

The following additional facts, as found by the court in its ruling on the motion in limine, and procedural history are relevant to this claim. The mobile video/ audio recording device, or MVR, in Krynski's cruiser was first activated when he turned on his cruiser's lights to initiate the traffic stop of the defendant. The recording—the entirety of which was admitted into evidence at trial with minor redactions[8]—captured both video and audio of the officers' interactions with the defendant, including the initial traffic stop, the administration of the field sobriety tests, and his subsequent arrest. Just prior to placing the defendant under arrest at the scene, however, Krynski deactivated his body microphone for approximately forty-eight seconds, during which time he and Quagliaroli walked away from the defendant to have a conversation. Because Krynski's body microphone provided the audio for the video recording captured by the cruiser's dashboard camera, the audio portion of the conversation between Krynski and Quagliaroli was not recorded. The video

portion of the recording, however, continued and showed that the conversation between the officers took place away from the defendant.

Prior to trial, the defendant filed a motion in limine that sought to preclude Krynski and Quagliaroli from testifying at trial because, according to the defendant, Krynski's deactivation of his body microphone while at the scene was contrary to existing state police regulations or directives and deprived the defendant of potentially exculpatory evidence in violation of his right to due process.[9] In addition to asking the court to preclude the testimony of both officers, the defendant alternatively asked the court to instruct the jury that it was permitted to draw an adverse inference against the state regarding the missing audio—namely, that it would have been unfavorable to the state.

The court conducted a hearing on the motion in limine. The defendant presented testimony from a single witness, Michael Mebane, a communication engineer with the state police. The purpose of Mebane's testimony was to establish that the cruiser's recording equipment was functioning properly at the time of the defendant's arrest and, thus, that the lack of audio resulted from Krynski's intentional decision to turn off his body microphone.[10] In his motion in limine and argument to the court, the defendant failed to point to any then existing statutory or regulatory requirements that imposed on the state police a duty to capture both audio and video recordings of the entirety of an OUI traffic stop. Rather, the defendant cited only to a portion of the state police's Administration and Operation Manual (AOM) that contains general guidelines instructing troopers to record continuously "all traffic stops."[11] After hearing argument by counsel, the court indicated that it would issue a decision after it had reviewed the record, including the audio/video recording of the traffic stop.

Prior to trial, the court made an oral ruling denying the motion in limine. Significantly, in its oral ruling, the court emphasized that the defendant's account in his motion regarding what had transpired during the period of time that Krynski turned off his body microphone was not accurate based on the court's review of the recording. Although the defendant stated in the motion in limine that the officers had failed to record "oral conversations with the defendant" and that the state was unable to "furnish a complete copy of the [officer's] interactions with the defendant," the court made the following contrary findings on the basis of its review of the video recording: "The video shows a conversation between . . . Krynski and Quagliaroli many feet away from the defendant. The defendant is not part of the conversation. Although the defendant is not saying anything, he's constantly being recorded. In fact, there's one view that he's laying his head on the roof of the

vehicle."[12]

The court found that all interactions between the officers and the defendant properly were recorded and was not persuaded that the defendant had established the existence of any legal duty on the part of Krynski to record his conversation with Quagliaroli. The court nevertheless also explained that, even if it were wrong in that regard, it was not convinced that the failure to record the conversation equated to a destruction of evidence. For purposes of its analysis, however, the court chose to presume without deciding that the trooper's unrecorded conversation was destroyed or otherwise unpreserved evidence, and it applied the four factor balancing test set forth by our Supreme Court in *State* v. *Asherman*, 193 Conn. 695, 724, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985), for determining whether a due process violation under the state constitution had occurred. The court concluded that, on balance, the factors weighed in favor of the state.

The court also determined that the defendant had failed to establish bad faith on the part of Krynski necessary to sustain a federal due process violation, and the defendant had also failed to establish any violation of the confrontation clause. Although the court denied the motion in limine, it indicated that it would grant the defendant extra leeway in cross-examining the officers about the unrecorded conversation. The court later filed a posttrial written articulation of its ruling.[13]

Both Krynski and Quagliaroli testified at trial and were extensively cross-examined by the defendant. During cross-examination, defense counsel asked Krynski why he had turned off his body microphone. Krynski explained that he wanted to get a "second opinion" from Quagliaroli as to whether he should arrest the defendant and to confer about whether it was safe to leave the defendant's vehicle at the scene or it was necessary to call a tow truck. Krynski agreed with defense counsel that he had not wanted his conversation with Quagliaroli to "become part of the case in evidence."

During closing argument, defense counsel argued that Krynski's act of turning off his body microphone and his testimony that he did not want his consultation with Quagliaroli to become part of the evidence in the case raised reasonable doubt regarding the defendant's guilt. Specifically, defense counsel argued that Krynski, in needing to consult with Quagliaroli prior to initiating the arrest, clearly had some concern regarding whether the defendant had failed the sobriety tests, and, according to defense counsel, Krynski's doubt was enough for the jury also to find reasonable doubt.

"The scope of our appellate review depends upon the proper characterization of the rulings made by the

trial court." (Internal quotation marks omitted.) *State v. Fowler*, 102 Conn. App. 154, 159, 926 A.2d 672, cert. denied, 284 Conn. 922, 933 A.2d 725 (2007). "[A] trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State v. Bruno*, 236 Conn. 514, 549, 673 A.2d 1117 (1996). To the extent that a ruling on a motion in limine turns on a legal determination, however, our review of that determination will be plenary. See *State* v. *Isabelle*, 107 Conn. App. 597, 604, 946 A.2d 266 (2008).

"[I]t is well established that there are two areas of constitutionally guaranteed access to evidence such that denying or foreclosing the defendant's access to that evidence may constitute a due process violation. . . . The first situation concerns the withholding of exculpatory evidence by the police from the accused. . . . The second situation . . . concerns the failure of the police to preserve evidence that might be useful to the accused." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Johnson*, 288 Conn. 236, 275–76, 951 A.2d 1257 (2008).

"Despite these constitutional concerns, it is not sufficient under the federal or state constitution for a defendant simply to demonstrate that the police or the state has failed to preserve evidence. With respect to a due process violation for failure to preserve under the federal constitution, the United States Supreme Court has held that the due process clause of the fourteenth amendment requires that a criminal defendant . . . show bad faith on the part of the police [for] failure to preserve potentially useful evidence [to] constitute a denial of due process of law. . . . Notably, in [*Arizona* v. *Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988)], the court observed that it had adopted a higher burden for defendants seeking to demonstrate a due process violation for failure to preserve evidence than that applicable to claims that the state has suppressed or withheld exculpatory evidence in violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) (not requiring defendant to show bad faith to demonstrate due process violation). The court in *Youngblood* explained that it was unwilling to read the fundamental fairness requirement of the [d]ue [p]rocess [c]lause . . . as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution. . . .

"In [*State* v. *Morales*, 232 Conn. 707, 723, 657 A.2d 585 (1995)], [our Supreme Court] rejected the federal bad faith requirement for claims alleging a failure to preserve in violation of our state constitution. Rather, [it] maintained that, in determining whether a defendant has been afforded due process of law under the state constitution, the trial court must employ the . . . bal-

ancing test [previously set forth in *State* v. *Asherman*, supra, 193 Conn. 724], weighing the reasons for the unavailability of the evidence against the degree of prejudice to the accused. More specifically, the trial court must balance the totality of the circumstances surrounding the *missing* evidence, including the following factors: the materiality of the missing evidence, the likelihood of mistaken interpretation of it by witnesses or the jury, the reason for its nonavailability to the defense and the prejudice to the defendant caused by the unavailability of the evidence." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Johnson*, supra, 288 Conn. 276–77.

On appeal, the defendant does not assert a *Brady* violation premised upon the state's *withholding* of some existing evidence that is exculpatory in nature.[14] Rather, the defendant frames his claim as one that challenges the state's alleged *destruction of or failure to preserve* evidence that he asserts was exculpatory. Specifically, the defendant argues that Krynski's decision to turn off his body microphone so that his conversation with Quagliaroli was never recorded is, in essence, the legal equivalent of the state failing to preserve or destroying evidence. For the following reasons, we disagree.

In *Johnson*, our Supreme Court was presented with an analogous claim, which it rejected. Id., 270–81. In *Johnson*, the defendant, who was appealing from a murder conviction; id., 238; claimed that the court improperly had denied a motion to dismiss in which he argued that his due process rights under the state and federal constitutions were violated because the investigating police officers had "failed to preserve the methods by which they interrogated" a key witness for the state by not recording the entirety of all of the interviews they conducted with the witness. Id., 270. The defendant also claimed that the court improperly had denied his request for an adverse inference instruction as an alternative remedy for the alleged due process violation. Id., 270–71. Our Supreme Court clarified that "[t]he defendant does not claim that the state withheld statements made by [the witness] or that the state failed to preserve the audiotaped statements that it created. Rather, the defendant claims that the investigating police officers had a duty to record the entirety of their interviews with [the witness] and that their failure to do so constituted a failure to preserve evidence within the meaning of *Morales* and *Youngblood*." Id., 278. Our Supreme Court disagreed with the defendant that the police's decision not to make recordings of what the police characterized as " 'preinterview[s]' "; id., 271; constituted a failure to *preserve* evidence that implicated his due process rights. Id., 279.

The court held that "the duty to preserve with which *Morales* and *Youngblood* are concerned depends on the

government's *possession of evidence capable of being preserved*" and that the state's duty to preserve evidence does not encompass or implicate "the collection and creation of evidence." (Emphasis added.) Id. The court agreed with the state's contention that "the trial court properly declined to dismiss the charges because it correctly recognized the distinction between allegations that the police had failed to *preserve* exculpatory evidence and allegations that the police had failed to *create* evidence that might have been exculpatory." (Emphasis in original.) Id., 270. In other words, if the police failed to make a recording of something they had no legal obligation to record, a court cannot properly conclude that the police withheld the production of evidence or destroyed evidence, because, in fact, no such evidence existed.

The defendant does not address or attempt to distinguish the holding in *Johnson* in his appellate brief but, instead, cites to nonbinding and unpersuasive out-of-state authorities to advance his argument that Krynski's intentional act of turning off his body microphone to confer with another police officer should be treated as the equivalent of the destruction of evidence. One of the cases cited by the defendant, *People* v. *Strobel*, 14 N.E.3d 1202 (Ill. App. 2014), rather than supporting his argument, in fact, is consistent with our Supreme Court's decision in *Johnson*.

In *Strobel*, the state appealed from a trial court ruling granting a defendant's motion in limine and barring the state from presenting at trial dashboard camera video of the defendant's performance of field sobriety tests and subsequent arrest, or from offering testimony from officers regarding the same. Id., 1203. The video recording did not contain any audio because the arresting officer purportedly forgot to activate his cruiser's audio device. Id. The Illinois appellate court reversed and remanded, holding that the trial court had abused its discretion by imposing discovery sanctions because the state promptly had turned over the video, which "contained no audio of the traffic stop because no audio was ever recorded." Id. Like in the present case, the defendant argued that the absence of audio on the video amounted to the destruction of evidence of what occurred during the traffic stop, and the state argued in response that, because no audio recording was ever made and in the possession and control of the state, the defendant's argument was without merit. See id. The appellate court agreed, stating that the record did not "support any inference or suggestion that the police or the prosecution *intentionally or inadvertently* destroyed any preexisting discoverable evidence."[15] (Emphasis added.) Id., 1205.

Here, just like in *Johnson* and *Strobel*, the evidence before the court showed that the police acted in a way that resulted in the failure to create an audio recording.

Specifically, a state trooper intentionally chose not to record audio of a brief exchange with another trooper that, as found by the court, occurred away from the defendant, without his involvement or that of any other member of the public. In order to implicate due process under either the federal or state constitution, however, the defendant must first demonstrate that the police or prosecution failed to preserve or destroyed some evidence *that actually existed.* As the court in *Johnson* made clear, the due process clause is not implicated by a claim that, in the absence of an express legal duty to do so, the state failed to collect or create certain evidence.

Moreover, although the defendant asserts that the officers had a legal duty to record their conversation at the scene, the defendant fails to point to any duly enacted statute or regulation as the source of such a legal duty. Our research has revealed none directly applicable or in effect at the time of the defendant's arrest.[16] The defendant relies entirely on a single page taken from a state police AOM regarding MVR recording guidelines. The portion of the guidelines submitted into evidence provides in relevant part: "The following incidents must be recorded by sworn personnel who are provided with vehicles equipped with MVR *cameras*, regardless of their duty status: (1) All traffic stops, criminal enforcement stops, assists to motorists, and pedestrian contacts in their entirety . . . . In doing so, troopers will ensure that . . . MVR equipment is not deactivated until the enforcement action undertaken is completed . . . ." (Emphasis added.) Nothing in the record before us, however, supports a conclusion that the procedures set forth in the AOM are anything more than administrative directives or best practices, or that the AOM guidelines created any cognizable due process interest in the defendant as might be the case with a duly enacted statute or properly promulgated regulation.[17]

Furthermore, the court made no determination, nor is it determinable from the record, that the guidelines on which the defendant relies were, in fact, actually violated by the troopers. Krynski never fully disengaged or deactivated the MVR equipment. The MVR's dashboard camera video recorded the entirety of the troopers' interactions with the defendant during the traffic stop.

In sum, in order to establish a due process violation premised on the state's destruction of or failure to preserve evidence, the defendant first must demonstrate the existence of some actual evidence that was within the control of the state. Here, the trooper's choice not to record audio of a consultation between himself and another law enforcement officer did not result in the creation of evidence that was capable of either preservation or destruction. Because this basic factual predicate underlying the alleged due process violation is

missing, the court properly rejected the defendant's constitutional claim.[18] Accordingly, because this was the sole basis advanced in the motion in limine for the requested relief, the court did not abuse its discretion in denying the motion in limine.

### III

Finally, the defendant claims that the court improperly sustained the state's objection to questions defense counsel asked Krynski regarding a finding made by a Department of Motor Vehicles (department) hearing officer in an administrative proceeding that no probable cause existed to arrest the defendant. On appeal, the defendant appears to argue that the court should have admitted evidence of the hearing officer's finding of no probable cause in order to impeach the "credibility" of the arresting officers.[19] The defendant also appears to assert that the hearing officer's finding of no probable cause is relevant and admissible to show that there was no probable cause to arrest the defendant. We are not persuaded.[20]

The following additional facts and procedural history are relevant to our resolution of this claim. During cross-examination, defense counsel asked Krynski whether, at some point prior to trial, he had appeared before the department in a driver's license suspension proceeding and presented the recording of the defendant's arrest to the department. The state objected, asked that the jury be excused, and requested an offer of proof. In response to the state's request for an offer of proof, defense counsel elicited testimony from Krynski that he had testified at a department hearing concerning the defendant's arrest. Krynski confirmed that, at some point following the department hearing, he had become aware of the hearing officer's findings. The hearing officer had concluded that, in her opinion, there was no probable cause to arrest the defendant because he had substantially passed the field sobriety tests, including by maintaining his balance on the one leg stand test for thirty-five seconds.

Defense counsel's claim to the court was that he had the right to cross-examine Krynski concerning the hearing officer's finding of no probable cause because Krynski's testimony regarding the finding could have helped the jury make a determination concerning his credibility, specifically with respect to his decision to arrest the defendant based on his performance of the field sobriety tests. On the basis of our review of the arguments advanced by the state, it is clear that the prosecutor perceived defense counsel's argument to be that the testimony concerning the hearing officer's finding of no probable cause was offered to attack the witness' credibility. The court's comments, likewise, reflect that it understood the defense counsel's argument to be that the testimony was admissible to impeach Krynski's credibility. The court provided

defense counsel an opportunity to respond to the characterization of his purpose for offering the testimony as an attack on Krynski's credibility, and defense counsel did not contest this characterization. The court sustained the state's objection and concluded that the evidence was not helpful to the jury's evaluation of the credibility of the witness.

We begin by setting forth our standard of review. "To the extent [that] a trial court's admission of evidence is based on an interpretation of [our law of evidence], our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. . . . Thus, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling[s] [on these bases] . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did." (Internal quotation marks omitted.) *Weaver* v. *McKnight*, 313 Conn. 393, 426, 97 A.3d 920 (2014).

A

The defendant first appears to argue that the testimony concerning the hearing officer's finding of no probable cause was admissible to impeach the testifying officers' credibility. We are not persuaded.

"The purpose of impeachment is to undermine the credibility of a witness so that the trier will disbelieve him and disregard his testimony." (Internal quotation marks omitted.) *State* v. *Valentine*, 240 Conn. 395, 411, 692 A.2d 727 (1997). Impeachment seeks to prevent any "inaccuracies [of a witness' testimony from] go[ing] unexposed and the truthfinding function of our trial system [from] be[ing] hindered." *State* v. *Graham*, 200 Conn. 9, 17, 509 A.2d 493 (1986); see id. (examining impeachment of party's own witness).

Prior findings by a third party concerning the credibility of a witness are generally inadmissible to impeach that witness' credibility in a later proceeding. See *Weaver* v. *McKnight*, supra, 313 Conn. 432–33; *Manson* v. *Conklin*, 197 Conn. App. 51, 62–63, 231 A.3d 254 (2020).[21] In *Weaver*, the mother of a stillborn infant brought a negligence action against her obstetrician/gynecologist and his medical group. *Weaver* v. *McKnight*, supra, 396; see also *Manson* v. *Conklin*, supra, 59. The trial court, over objection, permitted the defendants to impeach the credibility of the plaintiffs' expert witness using a censure that he had received

from a voluntary membership medical organization, which contained a determination that the expert had violated the organization's code of professional ethics. *Weaver* v. *McKnight*, supra, 424–25.

On appeal, our Supreme Court determined that the court improperly had admitted the testimony concerning the organization's determinations in the censure for the purpose of impeachment because it constituted extrinsic evidence of a prior act of misconduct.[22] Id., 432. Our Supreme Court noted that "[c]ommentators and courts in other jurisdictions . . . generally have concluded that counsel should not be permitted to circumvent the [prohibition on extrinsic evidence] by tucking a third person's opinion about prior acts into a question asked of the witness who has denied the act." (Internal quotation marks omitted.) *Manson* v. *Conklin*, supra, 197 Conn. App. 61, citing *Weaver* v. *McKnight*, supra, 313 Conn. 428. "Professor Colin C. Tait and Judge Eliot D. Prescott, in their treatise about Connecticut evidence law, also agree that a witness cannot be asked about the opinions of others regarding the alleged misconduct. C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 6.32.5, p. 362. They refer to [our Supreme] [C]ourt's decision in *State* v. *Bova*, [240 Conn. 210, 690 A.2d 1370 (1997)], as an example. In *Bova*, [our Supreme] [C]ourt upheld a trial court's decision to preclude a party from asking a police officer about another case in which a judge commented that another witness was more credible than the police officer. . . . Professor Tait and Judge Prescott [explain] in their treatise . . . [that] [mis]conduct . . . can be proved only by questions addressed to the witness, i.e., Did you lie in case X? If the witness denies such misconduct, the questioner must take the [witness'] answer and cannot introduce extrinsic evidence." (Citations omitted; internal quotation marks omitted.) *Weaver* v. *McKnight*, supra, 429–30.

As our Supreme Court noted, "[t]he reasons for prohibiting such questions are the same reasons for precluding extrinsic evidence in the first place. . . . The Third Circuit described the risk as follows: Allowing such a line of questioning not only puts hearsay statements before the jury, it injects the views of a third person into the case to contradict the witness. This injection of extrinsic evidence not only runs afoul of [the rules of evidence], but also sets the stage for a mini-trial regarding a tangential issue of dubious probative value that is laden with potential undue prejudice." (Citations omitted; internal quotation marks omitted.) Id., 430–31. Thus, our Supreme Court "conclude[d] that the prohibition on introducing extrinsic evidence to contradict a witness who has denied the alleged prior misconduct extends to cross-examining that witness about the opinions of third parties regarding that misconduct and whether the witness suffered any consequences as a result."[23] Id., 432.

This court recently considered a similar issue in *Manson* v. *Conklin*, supra, 197 Conn. App. 51. In that case, the plaintiff brought a negligence and indemnification action against a police officer and a city after the plaintiff collided with the officer's cruiser while riding his dirt bike in the city. Id., 52–53. Prior to trial, the court precluded the plaintiff from impeaching the officer's credibility using the findings and conclusions contained in a series of internal affairs investigative reports created by the city's police department, which documented unrelated instances in which the officer had engaged in misconduct and dishonesty.[24] Id., 55–56.

Relying on *Weaver*, this court affirmed the court's decision and determined that "the conclusions and findings contained within the [internal affairs] reports constitute extrinsic evidence of alleged prior misconduct because they reflect the opinions of the department that [the officer] acted untruthfully. Although the plaintiff would have been permitted to question [the officer] about his misconduct, he would have been precluded from offering extrinsic evidence of that misconduct if denied by [the officer]." Id., 62. Thus, "[t]he plaintiff could not circumvent these rules by questioning [the officer] about the conclusions and findings contained in the reports." Id.

In the present case, we conclude that the hearing officer's finding of no probable cause is inadmissible. If the trial court were to admit the hearing officer's finding to impeach the troopers' credibility, it would be tantamount to introducing extrinsic evidence to attack the troopers' credibility.[25] Although in the present case, unlike in *Weaver* and *Manson*, the hearing officer made her findings in the context of an administrative hearing and her findings did not contain an express finding of untruthfulness, we nonetheless conclude that the principles dictated in *Weaver* and *Manson* apply to the present case because the finding was offered by the defendant to impeach the credibility of witnesses on the stand. If a hearing officer makes a finding at a previous administrative hearing and a court admits that finding in a subsequent proceeding to allow a party to attack the credibility of a witness on the stand, the risk of "inject[ing] the views of a third person into the case to contradict th[at] witness" is patently present, and, thus, we are obligated to invoke the principles articulated in the aforementioned cases to curtail that risk. (Internal quotation marks omitted.) *Weaver* v. *McKnight*, supra, 313 Conn. 430–31. Defense counsel properly was permitted to, and did, cross-examine the arresting officers about their administration of the field sobriety tests to impeach their credibility. The court, however, properly did not admit the hearing officer's finding of no probable cause to permit defense counsel to impeach the witnesses' credibility.

B

The defendant also appears to argue that the court improperly excluded evidence of the hearing officer's finding of no probable cause because the evidence was relevant and admissible to show that there was no probable cause to arrest the defendant. We are not persuaded.

In his brief, the defendant asserted that the hearing officer's findings constituted "exculpatory evidence" that there was not probable cause to arrest him, which should have been admitted as evidence. During oral argument, however, counsel for the defendant stated that, although "ideally" he would have preferred that the hearing officer's finding of no probable cause be admitted for its truth, it would be inadmissible as hearsay for that purpose.

To the extent that the defendant maintains that the hearing officer's finding of no probable cause is relevant and admissible to prove that no probable cause existed to arrest the defendant, the defendant raises this argument for the first time on appeal and, thus, it is not preserved for review. "[T]his court is not required to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . . It is well established, however, that an unpreserved claim is reviewable under [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015)] when (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Citations omitted; internal quotation marks omitted.) *State* v. *Turner*, 334 Conn. 660, 673, 224 A.3d 129 (2020).

Upon review of the record, we conclude that the defendant's claim is not reviewable because it fails *Golding*'s second prong. See id. The defendant's claim is "purely evidentiary" in nature; see *State* v. *Ampero*, 144 Conn. App. 706, 721, 72 A.3d 435, cert. denied, 310 Conn. 914, 76 A.3d 631 (2013); and thus is not "of constitutional magnitude alleging the violation of a fundamental right . . . ." (Internal quotation marks omitted.) *State* v. *Turner*, supra, 334 Conn. 673.

Further, even if we were to reach the merits of the defendant's argument, we would also conclude that no constitutional violation exists because the hearing officer's finding, if offered to prove that there was no proba-

ble cause to arrest the defendant, is nonetheless inadmissible because it is not material. "A defendant . . . may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper . . . . Evidence is relevant if it tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence. . . . To be relevant, the evidence need not exclude all other possibilities; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree." (Citations omitted; internal quotation marks omitted.) *State* v. *Cerreta*, 260 Conn. 251, 261–62, 796 A.2d 1176 (2002). "Relevant evidence . . . has a logical tendency to *aid the trier in the determination of an issue*." (Emphasis added; internal quotation marks omitted.) *State* v. *Pena*, 301 Conn. 669, 674, 22 A.3d 611 (2011). The commentary to the § 4-1 of the Connecticut Code of Evidence explains that the code "expressly requires materiality as a condition to relevancy in providing that the factual proposition for which the evidence is offered must be material to the determination of the proceeding . . . . The materiality of evidence turns upon what is at issue in the case, which generally will be determined by the pleadings and the applicable substantive law." (Citations omitted; internal quotation marks omitted.) Conn. Code Evid. § 4-1, commentary. The jury, which is the "sole trier of the facts" in a jury trial; *State* v. *Morgan*, 274 Conn. 790, 802, 877 A.2d 739 (2005); ultimately "must find *every element* [of the charged offense] proven beyond a reasonable doubt in order to find the defendant guilty . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Gonzalez*, 311 Conn. 408, 419, 87 A.3d 1101 (2014).

Whether probable cause existed to arrest the defendant is not an element of either of the offenses on which the defendant was tried; see General Statutes §§ 14-222 and 14-227a (a) (1); and, thus, was not a material issue before the jury.[26] The jury, alone, was tasked with determining whether, considering all of the facts and circumstances before it, the prosecution proved beyond a reasonable doubt that the defendant operated a motor vehicle under the influence of alcohol or a drug. See General Statutes § 14-227a (a) (1). The hearing officer's opinion considering probable cause, a nonissue in the case, would not "aid the trier in the determination of" that, or any, issue in the case. (Internal quotation marks omitted.) *State* v. *Pena*, supra, 301 Conn. 674. Accordingly, because the hearing officer's finding of no probable cause was not material to the jury's determination of the case before it, we conclude that the hearing officer's finding would have been inadmissible for its truth.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] Although the defendant's motion broadly sought to suppress all of the "statements made by the defendant after his arrest" and "any evidence obtained as the fruits of those statements," the court limited its consideration to the statements that the defendant made at the station in response to the questions from the postarrest interview form, including his statements concerning alcohol and food consumption. The defendant on appeal primarily, if not exclusively, challenges the court's decision to admit these statements.

The defendant asserts in his brief, however, that while in custody at the scene of the stop, Krynski asked the defendant about certain receipts from the Pig's Eye Pub, which the arresting officers uncovered in the defendant's car. In its written decision on the motion to suppress the defendant's postarrest statements, the court determined that the defendant "did not respond" to Krynski's question about the receipts. The court deemed the receipts inadmissible hearsay and prohibited the state from eliciting testimony concerning their contents or any description thereof.

[3] Although the court did not make an explicit factual finding concerning the amount of alcohol the defendant drank on May 31, 2017, the court concluded that the defendant answered the questions he was asked by Krynski at the station, including how much alcohol he had drunk. During the suppression hearing, outside of the presence of the jury, and at trial, before the jury, Krynski testified that the defendant answered that he consumed two, twenty-three ounce beers.

[4] The court acknowledged that, at some point during booking, the defendant signed a notice of rights form, which memorialized the defendant's *Miranda* rights. The court concluded that this form was not an express waiver of his rights but, rather, indicated the defendant's understanding of the rights that he implicitly waived. The defendant asserts on appeal that, because he did not sign the notice of rights form until after being questioned, he did not waive his rights prior to questioning. This argument misconstrues the court's finding that the defendant implicitly waived his rights and that the completed notice of rights form did not amount to an explicit waiver.

[5] In a notice of supplemental authorities to this court, the defendant quoted five of eight factors that courts must consider in evaluating whether it is necessary for the police to again advise a suspect of his *Miranda* rights. See *In re Kevin K.*, 299 Conn. 107, 123, 7 A.3d 898 (2010). The defendant, however, failed to make any argument concerning whether, or how, any of these factors apply to the present case.

[6] We emphasize that the court's factual finding that the defendant was advised of his *Miranda* rights a second time in the booking area of the station is supported by evidence and, accordingly, is not clearly erroneous. See *FirstLight Hydro Generating Co.* v. *Stewart*, supra, 328 Conn. 679. Krynski testified outside of the presence of the jury that he had advised the defendant of his *Miranda* rights in the cruiser and then again at the station. The court reviewed two recordings: the video and audio recording from the scene of the arrest, which documented Krynski advising the defendant of his rights in the cruiser, and the video recording from the booking area, which documented Krynski and the defendant in the booking area, communicating at various points. In response to questions by the court, Krynski confirmed that, while in the booking area, he advised the defendant of his rights, then subsequently questioned the defendant.

[7] Alternatively, the state argues that any error was harmless because the court provided the defendant with an unfettered opportunity to cross-examine the officers at trial about the content of the unrecorded conversation and the purpose for turning off the microphone. Furthermore, it argues that the entirety of the video recording—which continued even during the time the microphone was muted—was available for review by the jury and constituted a complete recording of the defendant's interaction with the troopers at the scene.

[8] The video was redacted only with respect to certain statements that were made by both the defendant and the officers regarding the defendant's prior OUI history.

[9] Quagliaroli, who arrived at the scene after Krynski requested an additional trooper, indicated that his cruiser also was equipped with a mobile video/audio recording device but that he never activated his cruiser's lights and was unaware whether his vehicle had recorded anything. Although Quagliaroli's failure to initiate recording at the scene was also raised as a basis for the motion in limine, that ground was abandoned at the hearing on the motion after defense counsel had an opportunity to speak with Quagliaroli.

[10] Mebane testified that his responsibilities included the installation and maintenance of all recording devices used by the state police and that all troopers were obligated to ensure that any recording devices in a cruiser they were using were operational and, if not, to report any problems. Mebane indicated that he was unable to find any requests by Krynski for maintenance of the recording equipment used at the time of the defendant's arrest.

[11] The defendant submitted only a single page of the referenced operational manual into evidence. Krynski testified at trial that troopers are provided with a digital copy of the AOM and that the manual contains guidelines regarding the recording by troopers of their interactions with members of the public. No other witness testified regarding the AOM guidelines.

[12] At a posttrial hearing on the defendant's motion for a new trial, in which he raised a similar argument to those made in the motion in limine, the court again corrected the defendant's characterization of what was depicted in the video recording. The court clarified that Krynski was not having a discussion with the defendant when he turned off his body microphone. Specifically, the court cautioned: "I want the record to be clear for any appellate review that this is the second time that counsel for the defendant . . . misstated the facts in a motion. It is not a slight misstep because the video records accurately and is not . . . consistent to counsel's representation. . . . The claim . . . that this recording was with the defendant and while [Krynski] was talking to the defendant shut off the [microphone] . . . is completely not accurate."

[13] The defendant later submitted a proposed jury instruction that would have informed the jury that it was permitted to draw an adverse inference from Krynski's having turned off his microphone. That proposed instruction provided: "If you find that any member of [the] Connecticut State Police, at any point in their investigation of [the defendant], failed to preserve any evidence, including, but not limited to, audio recordings derived from the [recording] equipment installed in the trooper's motor vehicle, you may infer that such missing evidence would have been *unfavorable* to the state and may further draw an inference that the unpreserved evidence was favorable to [the defendant]." (Emphasis in original.) During the charging conference, the defendant again pressed the court to provide an adverse inference instruction to the jury. The state argued that such an instruction was not justified given that no evidence was missing or destroyed and that the defendant was free to make any assertion to the contrary in its closing argument to the jury. The court agreed and declined to give the requested instruction, referring in part to its earlier ruling on the motion in limine and its conclusion that the officers properly "had the ability to shut off the [body microphone] if they were in consultations."

[14] The defendant also has not raised or briefed any confrontation clause violation on appeal. Accordingly, we do not address that aspect of the court's decision.

[15] The defendant, in relying on *Strobel* to support his claim, suggests that it is fair to assume from the quoted language that the appellate court in *Strobel* would have reached a different conclusion if the record before it had established that the police officer *intentionally* had shut off the microphone, as Krynski did in the present case. We disagree. The court's statement draws no distinction between intentional and inadvertent conduct on the part of the police, mentioning both. Rather, the point the court appears to make is that, regardless of the level of culpability, in order for evidence to be withheld or destroyed it must be preexisting.

[16] We are aware that General Statutes § 29-6d contains various provisions discussing the use of body-worn recording equipment and dashboard cameras by the state police, and that a version of this statute was in effect at the time of the defendant's traffic stop. Although referenced by the trial court in its oral decision on the motion in limine, the defendant never relied on § 29-6d as supporting his claim before the trial court nor has he raised it or briefed its applicability, if any, on appeal. We accordingly decline to discuss the statute further.

[17] The procedures for promulgating administrative regulations are set forth in General Statutes § 4-168 of the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. The UAPA defines the term "regulation" in relevant part: "[E]ach agency statement of general applicability, without regard to its designation, that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term . . . does not include (A) statements concerning only the internal management of any agency and not affecting private rights or procedures available to the public, (B) declaratory rulings issued

pursuant to section 4-176, or (C) intra-agency or interagency memoranda . . . ." General Statutes § 4-166 (16).

[18] As argued by the state, the court also concluded that, even if Krynski's failure to record the conversation between himself and Quagliaroli was the legal equivalent of the destruction of or the failure to preserve evidence of that trooper's conversation, a weighing of the *Asherman* factors militates against the finding of a due process violation under our state constitution. See *State* v. *Asherman*, supra, 193 Conn. 724. Because we conclude that the defendant's claim fails under the rationale in *Johnson*, we do not address this alternative basis for affirming the court's denial of the relief requested in the motion in limine.

[19] During his cross-examination of Krynski, defense counsel attempted to offer evidence of the hearing officer's finding of no probable cause, and the court ruled on the state's objection to defense counsel's offer outside of the presence of the jury. The state subsequently called Quagliaroli to testify, at which point the court had already precluded entry of the evidence through Krynski. On appeal, the defendant asserts that, had he been allowed, he would have attacked the credibility of *both* officers by using the hearing officer's no probable cause finding. Thus, although defense counsel did not offer the evidence a second time or attempt to again raise his argument during the cross-examination of Quagliaroli, we nonetheless conclude that the defendant is not precluded from making his argument, as it relates to Quagliaroli, on appeal.

[20] Throughout his brief on appeal, the defendant additionally appears to argue that the court's preclusion of the testimony was not merely evidentiary error but deprived him of a fair trial in violation of his constitutional rights. The defendant did not make this claim to the trial court. Because we conclude that the court properly excluded the testimony on well established evidentiary principles, we are unpersuaded that the defendant's right to a fair trial was violated.

[21] The defendant urges us to abandon the case law of this state and instead follow the decision of the United States Court of Appeals for the Second Circuit in *United States* v. *White*, 692 F.3d 235, 248 (2d Cir. 2012), in which the Second Circuit determined that "witness[es] can be cross-examined based on prior occasions when [their] testimony in other cases had been criticized by [a] court as unworthy of belief." (Internal quotation marks omitted.) We decline to do so because it is not the province of this panel to disregard binding authority of our Supreme Court or to overturn a decision of another panel of this court.

[22] "[E]xtrinsic evidence is inadmissible to prove a witness' specific acts of misconduct evidencing a character for untruthfulness." *State* v. *Durdek*, 184 Conn. App. 492, 510, 195 A.3d 388, cert. denied, 330 Conn. 934, 194 A.3d 1197 (2018).

[23] Our Supreme Court noted that it "d[id] not decide whether a witness may be asked about a determination by a judicial, state administrative agency, or licensing board, not resulting in a perjury conviction, that the witness testified untruthfully in a prior proceeding." *Weaver* v. *McKnight*, supra, 313 Conn. 432 n.9.

[24] This court acknowledged that "[t]he record is somewhat muddled regarding the precise evidentiary use the plaintiff hoped to make of these reports or the information contained in them." *Manson* v. *Conklin*, supra, 197 Conn. App. 56. This court determined that the plaintiff offered the report findings for one of two reasons: (1) to impeach the officer's credibility using specific instances of misconduct, or (2) to admit the actual findings to prove that the officer had engaged in misconduct and had lied about it. Id., 56–57. The trial court "appear[ed] to have understood [the plaintiff's] argument to be that he had a right to question [the officer] about the findings and conclusions of the [internal affairs division], rather than asking [the officer] directly whether he had engaged in misconduct." Id., 57–58.

[25] We note that, even if the hearing officer's findings did not constitute inadmissible extrinsic evidence, offering evidence of the hearing officer's finding of no probable cause fails to impeach effectively the witnesses' credibility. The mere fact that a third-party hearing officer disagreed with the troopers' conclusion that probable cause existed to arrest the defendant does not necessarily mean that the hearing officer viewed the officers' testimony as untruthful. Indeed, the hearing officer may have concluded that the officers truthfully described the events surrounding the defendant's arrest, but that such facts, as a matter of law, did not create probable cause to arrest the defendant. Thus, even if the court's ruling was improper, it nonetheless would have constituted harmless evidentiary error for these rea-

sons.

[26] The defendant did not challenge the legality of his arrest before the trial court. At no point did the defendant move to dismiss the case on the basis of a lack of probable cause to arrest; see General Statutes § 54-56; or file a motion to suppress that raised a similar claim. See Practice Book § 41-12.

———————————————